JONES et al., Appellants and Cross–Appellees,

v.

OLCESE, Appellee and Cross–Appellant.

[Cite as *Jones v. Olcese* (1991), 75 Ohio App.3d 34.]

Court of Appeals of Ohio,
Trumbull County.

No. 90–T–4356.

Decided July 22, 1991.

*Martin S. Goldberg,* for appellants and cross-appellees.

*Stephen J. Charms, Joyce E. Carlozzi* and *Craig A. Grimes,* for appellee and cross-appellant.

JOSEPH E. MAHONEY, Judge.

Plaintiffs-appellants, Robert H. Jones and Ruth Jones, brought a medical malpractice action against defendant-appellee,[1] Dr. Arnaldo M. Olcese, alleging that appellee carelessly and negligently perforated the colon of Robert H. Jones while performing an inguinal hernia repair operation and that appellee failed to detect and repair the perforation.

The matter was tried to a jury on October 30, 1989. Both parties presented expert testimony. Appellants' experts opined that the injury to appellant Jones' bowel occurred during the hernia operation performed by the appellee. Appellee's expert testified that the perforation in the colon was caused by a perforated diverticulum and not by the appellee. A test performed three months after the hernia surgery indicated that appellant had diverticulitis.

---

1. Trumbull Memorial Hospital was also named as a defendant but was subsequently dismissed from the case. Thus, the matter proceeded to trial only against Dr. Olcese.

The jury returned a verdict for the appellee and the trial court entered judgment thereon. Thereafter, appellants filed a motion for a new trial which was denied. Appellee filed a motion for assessment of costs pursuant to Civ.R. 54(D), which was also denied.

Appellants have filed a timely appeal, raising the following assignments of error:

"1. The trial courts [*sic*] ruling on Plaintiff–Appellant's [*sic*] Motion for a New Trial on the grounds of the verdict being against the manifest weight of the evidence was error.

"2. The trial court committed prejudicial error when it failed to intervene sua sponte and admonish or restrain the Defendant's counsel from pursuing an inflammatory argument designed to arouse the passion and prejudice of the jury.

"3. The trial court committed prejudicial error when despite plaintiff's [*sic*] strenuous objection it permitted defendant to continue an inflammatory closing argument and in failing to restrain or admonish counsel from making highly prejudicial comments designed to arouse the passion and prejudice of the jury."

Appellee has filed a cross-appeal assigning the following as error:

"The trial court erred by overruling appellee-cross-appellant's motion for costs pursuant to Civ.R. 54(D)."

■ Under the first assignment of error, appellants contend that the trial court erred in denying their notion for a new trial on the ground that the verdict was against the weight of the evidence.

Whether to grant or deny a new trial is within the sound discretion of the trial court. Absent an abuse of that discretion, this appellate court will not reverse the decision of the trial court. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685; *Page v. Robinson* (Sept. 7, 1990), Trumbull App. No. 88–T–4126, unreported, 1990 WL 128261; *Barnes v. Mayfield* (Jan. 12, 1990), Lake App. No. 13–092, unreported, 1990 WL 2538.

In deciding a motion for a new trial based on the weight of the evidence, the trial court must weigh the evidence and pass upon the credibility of witnesses. However, the trial court's weighing of the evidence differs from that of the jury in that it is restricted to determining whether manifest injustice has been done and whether the verdict is, therefore, manifestly against the weight of the evidence. The court may not set aside a verdict on the weight of the evidence simply because its opinion differs from the jury's opinion. *Poske v. Mergl* (1959), 169 Ohio St. 70, 8 O.O.2d 36, 157 N.E.2d 344.

The evidence in this case was disputed. There were two versions presented of how appellant Jones' bowel was punctured. Appellants' experts, Dr. Marc Cooperman and Dr. Edward J. Pollyea, testified that appellee punctured the bowel when he performed the hernia operation. Appellee and his expert, Dr. David Baringer, testified that the bowel perforation could not have been caused by appellee as it was impossible to injure the posterior descending colon in performing either a direct or indirect hernia repair. Baringer testified that the perforation was more likely to have been caused by a ruptured diverticulum.

The jury's verdict is supported by the testimony of appellee and Baringer. Obviously, both the jury and the trial court found the testimony of appellee and his expert to be more credible than the opinions of appellants' experts. Since the verdict is supported by competent credible evidence, this court will not reverse the judgment as being against the weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Appellants have failed to demonstrate that the trial court abused its discretion in denying their motion for a new trial; therefore, the first assignment of error is not well taken.

■ In the second and third assignments of error, appellants contend that the trial court erred when it allowed appellee's counsel to pursue and continue an inflammatory closing argument which was designed to arouse the passion and prejudice of the jury.

Specifically, appellants object to the characterization of their expert, Pollyea, as incompetent and unqualified, his testimony as irresponsible and unintelligent and a reference to him as a professional witness who testifies for a living.

A review of the transcript reveals that appellees's counsel made the following remarks regarding Pollyea:

" * * * Before Mr. Goldberg filed this case, he got a report from *Dr. Pollyea whose testimony in this case is absolutely irresponsible and unintelligent. Dr. Pollyea knows nothing about surgery.* Remember I asked him that series of questions over and over again. 'Hernia repair—I don't know. I am not a surgeon.' 'Well, how do you know?' 'Well, I don't know. I am not a surgeon.' 'Well, how do you do this?' 'I don't know. I am not a surgeon.' But the law tells you, you have got to have an expert witness to make a case of medical malpractice so I am confronted with a report from an allergist who last picked up a scalpel in medical school in 1972? Remember that testimony? I asked him that specifically. Anyway, what is this un-

informed physician—*and I use that term guardedly because he is a professional witness and you heard that. Over $66,000 of income from medical malpractice work.* * * * [Emphasis added.]

"* * *

"Mr. Goldberg knows, no defense lawyer, no doctor in a surgical case is going to listen to an internist, an allergist, the guy where you go in where you have allergies for weekly shots; that is really what the man does—testified against a surgeon. Send that man a message and tell him he doesn't belong in courtrooms like this giving these kind [*sic*] of opinions. *He is incompetent, unqualified; it is an outrage to bring you an allergist.* How many times did I have to impeach him with his deposition? Probably the most significant in my mind is when I asked him about that episode of sharp flaming pain on Friday. Remember that in his videotape? Every surgeon who took that stand told you that was a classic sign of perforation of a viscus. Dr. Pollyea sat there, never looked you in the eye, never looked anybody in the eye and says, his answer was 'Where would I have ever said that?' I said, 'Your deposition.' And I asked him earlier, if you recall on cross examination 'having told the truth at your discovery deposition and telling us the truth today, there should be no inconsistency' and then a dozen times I had to impeach him with his deposition. *That man's a pro. He does it for a living,* and your verdict has got to tell him that." (Emphasis added.)

Counsel is generally afforded a wide latitude in addressing the jury during opening statements and closing arguments. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 140, 38 O.O. 578, 580, 84 N.E.2d 912, 915; *Cusumano v. Pepsi-Cola Bottling Co.* (1967), 9 Ohio App.2d 105, 38 O.O.2d 132, 223 N.E.2d 477. Failure of counsel to object to the alleged misconduct during trial constitutes a waiver of any error associated with the alleged misconduct. *Yerrick v. Gas Co.* (1964), 119 Ohio App. 220, 27 O.O.2d 67, 198 N.E.2d 472; *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630.

Appellants concede that they failed to object to the characterization of Pollyea, but they argue that the trial court had a duty to intervene *sua sponte.*

In *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 44 O.O.2d 18, 238 N.E.2d 563, paragraph one of the syllabus, the court held:

"Except where counsel, in his opening statement and closing argument to the jury, grossly and persistently abuses his privilege, the trial court *is not required to intervene sua sponte* to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct. Ordinarily, in order to support a reversal of a judgment on the ground of misconduct of

counsel in his opening statement and closing argument to the jury, it is necessary that a proper and timely objection be made to the claimed improper remarks so that the court may take proper action thereon." (Emphasis supplied.)

▮ Remarks which are not warranted by the evidence and are designed to arouse passion or prejudice to the extent that there is a substantial likelihood that the jury may be misled may constitute prejudicial error. *Jones v. Macedonia–Northfield Banking Co.* (1937), 132 Ohio St. 341, 8 O.O. 108, 7 N.E.2d 544; *Jackson v. Booth Mem. Hosp.* (1988), 47 Ohio App.3d 176, 547 N.E.2d 1203. Whether the alleged misconduct is sufficient to taint the verdict with passion or prejudice is for the trial court's determination. *Id.* Unless the record clearly demonstrates that counsel's argument was highly improper and inflamed the jury, this appellate court will not disturb the exercise of the trial court's discretion. *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298, 9 OBR 544, 545, 459 N.E.2d 1315, 1316. See, also, *Ramos v. Long* (June 29, 1990), Portage App. No. 89–P–2103, unreported; *Kovac v. Ferren* (May 26, 1989), Trumbull App. No. 4038, unreported, 1989 WL 56368; *Colon v. Gen. Motors Corp.* (Dec. 30, 1988), Trumbull App. No. 4043, unreported, 1988 WL 142027.

Appellants failed to object to the remarks regarding Pollyea. Moreover, the remarks were not improper as they were warranted by the evidence or inferences properly drawn from the evidence.

The record shows that Pollyea admitted he is an internist and allergist and not a surgeon. He admitted he did not perform surgery or hernia repairs, has not observed any hernia operations, and he was not familiar with the surgical procedures involved. Furthermore, when asked about surgery or the hernia procedure, Pollyea repeatedly answered he did not know as he was not a surgeon or an expert in that area. Finally, Pollyea conceded that he has reviewed more than eighty malpractice cases from which he has derived $66,000 in income.

"The scope of cross-examination of a medical expert on the questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008, syllabus.

▮ Therefore, the remarks of appellee's counsel do not constitute misconduct. However, even if we were to conclude that they were improper, they certainly do not constitute clear evidence that the jury's verdict is a product of passion or prejudice. Thus, we cannot find that the trial court abused its discretion. *Lance, supra.*

■ The other comment appellants contend was prejudicial was made by appellee's counsel in the following context:

"I agree, and if that is what you believe happened here, then you return a verdict for Mr. Jones. Here's a man who has been doing operations for 20 years, who is board certified, re-certified and has been nominated for the Naval Cross. He is going to present a paper to the American College of Surgeons next year on hernia repair. What he told you is his fondness in general surgery, but they want you to believe that he put this hole in the bowel and didn't give a damn. That is what Dr. Cooperman said. It makes no sense. *You'd have to be barbaric. You'd have to be a maleficent, vicious killer.*" (Emphasis added.)

Appellants' counsel objected, appellee's counsel withdrew the comment, and the court stated:

"The court will direct the Jury that this is argument, some leeway is allowed, but counsel will restrain himself a little bit."

It is evident from the record that this was an isolated incident and that the trial court instructed the jury, at the time it occurred and later in its jury instructions, that this was counsel's argument and, therefore, not evidence in the case.

Clearly, counsel was admonished and a curative instruction was given to cure any prejudicial effect of counsel's comment. Furthermore, counsel did not grossly and persistently abuse his privilege as the comment was an isolated incident. *Snyder, supra.* It does not warrant reversal of the trial court's judgment as it was not so highly improper or inflammatory as to constitute clear evidence that the jury's verdict was tainted by passion or prejudice. *Kovac, supra.*

Appellants' second and third assignments of error are not well taken.

In his cross-appeal, appellee argues that the trial court erred in denying his motion for costs pursuant to Civ.R. 54(D).

Appellee seeks to recover $3,308.57 as taxable costs for the following expenses:

Discovery deposition of plaintiff, Ruth Jones, court reporter charge....... $ 230.25
Discovery deposition of plaintiff, Robert Jones, court reporter charge ..................................................................177.50
Discovery deposition of plaintiff's expert, Marc Cooperman, M.D., court reporter ................................................................ 1,087.47
Expert fee of plaintiffs' expert, Marc Cooperman, M.D., for attending discovery deposition..............................................................675.00
Discovery deposition of plaintiff's expert, Edward J. Pollyea, M.D., court reporter charge ................................................................282.10

Expert fee of plaintiffs' expert, Edward J. Pollyea, M.D., for preparing for and attending discovery deposition ..................... $ 406.25

Expert fee of defendant's expert, David Baringer, M.D. .................. 450.00

TOTAL ...................................................... $3,308.57

Appellee contends that the foregoing expenses were necessary and vital to the defense of appellants' claims against him and, therefore, should have been allowed by the trial court.

On February 5, 1990, the trial court denied appellee's motion for costs, noting that:

"Precedents cited by these parties set forth varying appellate views on the breadth of the trial court's discretion or mandate on the allowance of the expense of discovery depositions and expert fees as costs; the prevailing view seems to preclude expert fees and allow the expense of depositions as costs *only if used in the trial.*

"In this case, none of the depositions for which defendant requests this Court to assess its expense as costs, was used at trial.

"Motion denied.

" 'Court has discretion as to how costs of an action shall be assessed.' *State ex rel. Fant v. Regional Transit Auth.* (1990), 48 Ohio St.3d 39 [548 N.E.2d 240]." (Emphasis added.)

■ Determining which costs are taxable under Civ.R. 54(D) requires a two-step analysis by the trial court. The first step is to determine whether the expense is a taxable litigating expense or a personal expense, and the second step is to determine whether the litigating expense should be taxed as a cost in the particular case. *Jones v. Pierson* (1981), 2 Ohio App.3d 447, 2 OBR 542, 442 N.E.2d 791.

■ Generally, a deposition which is used only for impeachment purposes is not so vital to the litigation to be considered as a necessary litigating expense and taxed as a cost. However, exercising its discretion, the court may determine that such deposition is so vital for impeachment purposes as to become. a litigating expense. *Id.* at 451, 2 OBR at 546, 442 N.E.2d at 796.

■ Each case must be determined on its particular facts, but the party seeking to recover the expense has the burden of proving that the expense should be considered a taxable litigating expense. *Id.*

■ In *Horne v. Clemens* (1985), 25 Ohio App.3d 44, 25 OBR 118, 495 N.E.2d 441, this court adopted the *Jones* two-step analysis and held that the

trial court abused its discretion in denying the expense of taking depositions. We reasoned that:

"Much of the funds expended by a party are necessary and vital to the litigation and must be characterized as a taxable litigating expense which will normally be awarded as costs to the prevailing party pursuant to Civ.R. 54(D). In most cases, all litigating expenses shall be awarded as costs. *Jones, supra.*

"A trial court's discretion to disallow costs is limited to refusing to tax a litigating expense as a cost only where such expense is an unusual expense in type or amount which because of the prevailing party's conduct it is inequitable to assess against the non-prevailing party.

"There was no indication by the trial court that the cost of taking the two defendants' depositions was an unusual expense. The amount assessed was reasonable.

"Civ.R. 54(D) allows assessment of the cost of deposition if allowed by the trial court. Certainly taking depositions is good legal practice and considered essential to the proper preparation for trial. Denying this cost was an abuse of discretion by the trial court." *Horne, supra,* 25 Ohio App.3d at 47, 25 OBR at 120, 495 N.E.2d at 444. See, also, *Adkins v. Wright* (Sept. 30, 1987), Ashtabula App. No. 1285, unreported, 1987 WL 17998; *Bookatz v. Kupps* (1987), 39 Ohio App.3d 36, 528 N.E.2d 961; *Zittkowski v. Zittkowski* (1990), 70 Ohio App.3d 484, 591 N.E.2d 396; *Rosenbaum v. Voorhees* (May 18, 1990), Geauga App. No. 89–G–1522, unreported, 1990 WL 67763.

In the case before us, it seems that the trial court was under the impression that costs for discovery depositions are only allowed if the depositions are used at trial. This is evident by the trial court's explanation in its order denying appellee's motion for costs. Thus, it appears that the trial court never exercised its discretion in determining whether the subject depositions were vital and necessary for impeachment purposes and whether the expenses of the depositions were unusual or unreasonable.

We, therefore, remand this issue to the trial court so that it can properly exercise its discretion in making such a determination.

■ Expert witness fees were addressed by this court in *Rosenbaum, supra,* and were disallowed as taxable costs. In support, we cited *Gold v. Orr Felt Co.* (1985), 21 Ohio App.3d 214, 21 OBR 228, 487 N.E.2d 347, wherein the court also disallowed expert witness fees, stating at 216, 21 OBR at 231, 487 N.E.2d at 349:

" * * * Nor are we aware of any other source of authority which allows for an expert witness' fee to be charged against the losing party. To the

contrary, this court has expressly disallowed such an award. *Tom Harrigan Oldsmobile, Inc. v. Illini Building Systems, Inc.* [ (Mar. 5, 1981), Montgomery App. No. 6896, unreported, 1981 WL 2713], *supra;* accord *Hammell v. Ted Papenhagen Oldsmobile Inc.* [ (May 11, 1984), Lucas App. No. L–83–397, unreported, 1984 WL 7873], *supra.* Likewise, it is the position of the federal courts that Fed.R.Civ.P. 54(d) does not authorize taxing as costs a party's expert witness' fee. *Illinois v. Sangamo Const. Co.* (C.A. 7, 1981), 657 F.2d 855."

Accordingly, appellee's cross-assignment of error is well taken as to the costs of the discovery depositions and not well taken as to the expert witness fees.

For the foregoing reasons, the judgment of the trial court is remanded on appellee's cross-assignment of error regarding the expense of the discovery depositions and is affirmed as to the expense of expert fees. In all other respects, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and EDWARD J. MAHONEY, J., concur separately.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

FORD, Presiding Judge, concurring.

Like Judge Edward J. Mahoney, I concur in the judgment and opinion, but I also wish to embellish the majority's treatment of the appellant's second and third assignments of error.

It is fundamental that counsel's summation at the conclusion of a trial is to be based on the evidence table in the record of the proceedings. *Herman v. Teplitz* (1925), 113 Ohio St. 164, 170, 148 N.E. 641, 643; *Jones v. Macedonia–Northfield Banking Co.* (1937), 132 Ohio St. 341, 8 O.O. 108, 7 N.E.2d 544. It is also generally viewed that some license and flexibility are accorded attorneys in the tangential flights they suggest to jurors may be indulged from the evidence table based on their individual and collective common experience. *Durst v. Van Gundy* (1982), 8 Ohio App.3d 72, 75, 8 OBR 103, 107, 455 N.E.2d 1319, 1322; *Jackson v. Booth Mem. Hosp.* (1988), 47 Ohio App.3d 176, 180, 547 N.E.2d 1203, 1207.

I, too, closely scrutinized the trial testimony of Drs. Cooperman and Pollyea. That examination fails to provide any rational basis for caustic statements that one of appellants' expert medical witnesses was professionally "incompetent and unqualified," or that his testimony was "irresponsible or unintelli-

gent," or for the comment that he is a professional witness who testifies for a living.

 I do not agree with the majority's statement that "the remarks were not improper as they were warranted by the evidence or inferences properly drawn from the evidence." More than rhetorically, I ask, where? The majority fails to point out that the $66,000 earned by Pollyea was over a five-year period of time, and that his primary income obtained from his practice of internal medicine.

With respect to the syntax employed in part by Attorney Charm with reference to appellants' other medical witness, it is deemed most appropriate to quote briefly from the transcript certain questions submitted by Attorney Charm, and the witness' responses from the transcript:

"Q. I am going to get to that in a minute. My question to you, though, was Dr. Olcese's operative note specifically describes the hole as being in the posterior wall of the descending colon.

"And you would agree, him having been there, he's in the best position to tell us where he found the hole. You would agree with that.

"A. I would agree with that.

"Q. Now, are you telling this jury that you disbelieve his operative note when he describes the hole that he found on March 9th, 1987, as being in the posterior wall of the descending colon?

"A. I think that he simply could not have known where he was.

"I'm not—when you say 'disbelieve,' you make it sound like I think he is lying in his note, which I don't. But I think it's very possible that he is erroneous in his note."

" * * *

"Q. Now, with regard to injuring the bowel, again back to this anterolateral wall injury that you believe occurred, it's your testimony, is it not, that any competent surgeon would see that injury in front of him?

"A. Yes, it should have been recognized and repaired.

"And that's—

"Q. Assuming it was there.

"A. Assuming it was there.

"Q. So if it wasn't there then there is nothing to be concerned about, is there?

"A. That's true. But if it was and it was unrecognized, it's also substandard surgical practice.

46

"Q. Well, it would be more than that, wouldn't it, Doctor?

"If you saw, if a surgeon saw a hole in the bowel like that, which you shouldn't be able to miss under your original theory of how this injury occurred, it would be a lot more than substandard medical care to let that bowel fall back within the abdomen, wouldn't it?

"A. Yes, it would.

"Q. It would be criminal, wouldn't it?

"A. I am not going to use those words. It would be negligent.

"Q. It would be outrageous, wouldn't it, Doctor?

"A. Outrageous is a good word.

"Q. For a board certified and recertified surgeon to let a bowel with a hole in it fall back intraperitoneal would be incomprehensible, wouldn't it?

"A. Yes, it would be incomprehensibly poor surgical care.

"Q. I think everybody agrees with that."

The substance and tenor of the foregoing in this writer's estimate do not provide any basis whatsoever to state that Cooperman testified that the appellee "didn't give a damn" or that Cooperman by his testimony wanted to leave the impression with the jury that the appellee was "barbaric" or "a maleficent, vicious killer." Having authored *Shugart v. Solyn* (Aug. 30, 1984), Mahoning App. No. 83 C.A. 60, unreported, 1984 WL 5002, as well as other commentaries on this subject, this writer appreciates the delicate balance that is imposed by reviewing courts, and the exercise that must be undertaken to determine if there is a prejudicial effect to such vitriolic mouthings.

I agree that the trial court's handling of this issue can be best described as euphemistic and bland, and that its instruction was at best a modest, boilerplate, prophylactic exercise. But like my colleagues, I am not able to conclude under the record of this case that it rises to the crest of plain error.

This writer must concede that there is a very thin line between this case and *Shugart, supra.* The conclusion is unequivocal, however, that this type of venomous argumentation has no place in the trial courts of this district, or any other for that matter. It is better left in a landfill that would accept it before the oracle who wishes to voice it crosses the threshold of a hall of justice. Attorneys who practice in the field in question here are not endowed with special privileges to engage in such excesses! Civility remains the hallmark of professionalism!

EDWARD J. MAHONEY, J., concurring.

I concur in the judgment and opinion but desire to add my personal reaction to reading the testimony of Drs. Cooperman and Pollyea in light of Attorney Charms' argument. Suffice it to say, that had there been a timely objection, I would have considered reversal. Even under the peculiar facts of this case, the argument was abusive and improper beyond fair comment on the evidence. The only timely objection was sustained and routinely handled by the trial judge. I can not say the rest of the argument was such that we could find that it precipitated a miscarriage of justice amounting to plain error.