OPINION
On May 14, 1998, plaintiff, Carol J. Jackman, filed a complaint in the Franklin County Court of Common Pleas against defendant, Sarah Nicholson. The complaint resulted from an automobile accident which occurred on May 1, 1997, at the intersection of Dublin Road and Grandview Avenue in Franklin County, Ohio, and alleged damages for personal injury based upon defendant's negligence in the operation of her automobile. Defendant filed an answer denying the allegations of the complaint and included a counterclaim alleging personal injury based upon plaintiff's negligence in the operation of her automobile. After defendant's claims were settled, the trial court dismissed her counterclaim with prejudice. Plaintiff was later granted leave to amend her complaint to include a loss of consortium claim on behalf of her husband, Craig Jackman.[1] In February 2000, the trial court granted the motion to intervene filed by plaintiff's insurer, Community Insurance Company.
The case was birfurcated as to liability and damages. The liability phase was tried to a jury over three days beginning February 7, 2000. At trial, plaintiff testified that at approximately 5:45 p.m. on May 1, 1997, she was traveling westbound in the center lane of Dublin Road. As she approached the intersection of Dublin Road and Grandview Avenue, she noticed two cars turning northbound onto Grandview Avenue from eastbound Dublin Road. After those cars cleared the intersection, she entered the intersection as the traffic signal changed from green to yellow. Once in the intersection, plaintiff noticed defendant's vehicle in the left turn lane of eastbound Dublin Road. Plaintiff assumed that since she was already in the intersection, defendant would not turn northbound onto Grandview Avenue until plaintiff was through the intersection. Defendant, however, commenced her turn while plaintiff was still in the intersection and subsequently struck plaintiff's vehicle.
Richard McGinnis, a traffic engineer, testified as an expert witness on behalf of plaintiff. McGinnis testified that when the signal was green for eastbound Dublin Road traffic, it was also green for traffic traveling westbound on Dublin Road. McGinnis, however, offered no opinion as to the color of the traffic signal at the time of the collision.
Defendant testified that just prior to the collision, she was behind two vehicles in the left turn lane of eastbound Dublin Road. As the two vehicles ahead of her turned left onto northbound Grandview Avenue, she moved into the intersection. At the time she entered the intersection, the traffic signal was green. After the westbound Dublin Road traffic cleared, defendant initiated a left turn onto Grandview Avenue. As she made the turn, her vehicle was struck by plaintiff's vehicle as it traveled westbound on Dublin Road. Defendant testified that she did not see plaintiff's vehicle coming toward her when she began her turn onto Grandview Avenue. She further testified that she last looked at the traffic signal as she entered the intersection and did not notice the color of the signal when she initiated the turn. She testified, however, that prior to making the turn, she noticed that the traffic directly opposite her in the left turn lane of westbound Dublin Road had stopped.
William Gross, an eyewitness to the accident, testified on behalf of defendant. Gross testified that he was traveling westbound on Dublin Road at approximately 5:45 p.m. on May 1, 1997, approaching the intersection of Grandview Avenue. As the traffic signal changed from yellow to red, he slowed to stop his vehicle. According to Gross, the vehicle directly ahead of him, which he later determined was driven by plaintiff, proceeded into the intersection on the red traffic signal and struck defendant's vehicle as it turned northbound onto Grandview Avenue from eastbound Dublin Road. Although Gross admitted on cross-examination that he had no specific recollection as to whether he saw the collision or the red light first, he averred that he must have seen the red light first because he slowed his vehicle to stop at the red light prior to the time the collision occurred.
A general verdict was returned for defendant after the jury assigned seventy-five percent negligence to plaintiff and twenty-five percent negligence to defendant. The trial court filed a judgment entry on February 23, 2000, dismissing plaintiff's complaint with prejudice. On March 9, 2000, the trial court filed a "Supplemental Judgment Entry" dismissing intervenor Community Insurance Company's complaint with prejudice. On March 13, 2000, plaintiff filed a motion for new trial, which was denied by the trial court by entry dated April 7, 2000. Plaintiff now appeals, asserting two assignments of error, as follows:
 [I]. The trial court erred by reading a prejudicial instruction to the jury in the middle of the trial and by not granting plaintiffs' motion for a mistrial.
 [II]. The trial court erred by not granting plaintiffs' motion for a new trial.
By the first assignment of error, plaintiff contends that the trial court erred in giving a "prejudicial" instruction to the jury and in failing to grant their motion for mistrial. After plaintiff completed her testimony, defense counsel requested a short recess. Upon return from the recess, the court bailiff notified the court that a female juror had reported to the bailiff that defendant had dropped some notes to the jury in the ladies' restroom. According to the bailiff, after the juror reported the incident, the bailiff went to the restroom and found the notes in one of the stalls. The bailiff spoke to another female juror outside the restroom and ascertained that the notes were seen or read by at least two jurors.
Since the tone of the notes suggested that they were written by plaintiff, but the juror indicated they were dropped by defendant, the court inquired of both counsel, and it was soon determined that the notes were written by plaintiff. The notes were made part of the record by the court and identified as "Court's Exhibit 1," "Court's Exhibit 2," and "Court's Exhibit 3." Exhibit 1 states: "To the jury[.] If I knew I had run a red light why would I go thru all this time + expense to bring this to trial[.]" Exhibit 2 states: "Odds are in my favor as to what happened. How many people see a lot of people run red lights? I've only seen 2 in my whole life. However, how often do people see other people coming towards them, + turn in front of them to turn left." Exhibit 3 states: "I knew the light was yellow + I saw her facing me. She didn't know what color the light was + she didn't see me she wasn't paying attention. A pause between the 3 cars indicates there was oncoming traffic going towards her. Are we going to be able to let the jury know why this case has gone to trial they might wonder why a simple traffic accident has necessitated a jury trial."
Plaintiff's counsel explained that the notes must have accidentally fallen out of a notebook plaintiff carried with her. Counsel further contended that the notes were simply memoranda of points plaintiff wanted counsel to emphasize in his arguments to the jury.
After lengthy off-the-record discussions relating to the notes, the court ultimately concluded that it would instruct the jury as to what had transpired with regard to the notes. Pursuant to the court's request, defense counsel submitted a proposed jury instruction. The instruction was made a part of the record by the court and identified as "Court's Exhibit 4." Exhibit 4 states:
 Ladies and gentlemen of the jury: It has been reported to the court that three notes, which I have here and which I now show you, were left in the ladies' restroom and discovered by one or more of the jury. These notes were written by the plaintiff, Carol Jackman and they are written about the trial and evidence. One is addressed "To the jury."
 The court instructs you to disregard these notes and cautions you that it is improper for anyone to attempt to contact you about the case in any way until it is over. The parties and counsel are similarly cautioned. The Court further instructs you that any contact that any of you may have had with these notes be totally disregarded.
Plaintiff's counsel objected to the proposed instruction on several bases: that it identified the notes as being written by plaintiff; that it improperly implied that plaintiff intentionally left the notes in the restroom; and that it characterized the situation as an improper attempt by plaintiff to contact the jury. Counsel further argued that any instruction given by the court should indicate only that the notes were not written by defendant; that the jury was not to speculate as to who wrote the notes; and that the jury was not to consider the notes for any purpose. After the trial court determined that it would give the instruction proposed by defense counsel, plaintiff's counsel moved for a mistrial. After further discussions, the trial court denied the motion for mistrial and read the instruction over counsel's objections. The court then conducted a voir dire of each juror individually in the presence of counsel, inquiring whether he or she could follow the admonitions contained in the instruction and decide the case on the evidence as fair and impartial jurors. Each juror responded in the affirmative.
Plaintiff contends that the instruction given by the trial court prejudiced her right to a fair trial. Specifically, plaintiff maintains that the instruction impugned Mrs. Jackman's character by improperly implying that she intentionally left the notes in the restroom in an attempt to influence the jury to decide the case in her favor. Plaintiff argues that the jury was irreparably tainted by the instruction such that a mistrial was necessitated. The criteria for determining such a question was discussed by the Ohio Supreme Court in State v. Wells (1992), 83 Ohio App.3d 147, in which it stated the following:
 "* * * In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. * * * This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial. [Id. at 153, quoting State v. Glover (1988), 35 Ohio St.3d 18.]
Where a trial court is exercising discretion, the test for finding an abuse of that discretion is more stringent than the test for finding an error of law it requires a finding that the court's decision was unreasonable, arbitrary or unconscionable. State ex rel. Leigh v. State Employment Relations Bd. (1996), 76 Ohio St.3d 143, 145.
As was noted by the court in Apaydin v. Cleveland Clinic Foundation (1995), 105 Ohio App.3d 149, "[o]ne touchstone of a fair trial is an impartial trier of fact — `a jury capable and willing to decide the case solely on the evidence before it.'" Id., citing McDonough Power Equip., Inc. v. Greenwood (1984), 464 U.S. 548, 104 S.Ct. 845.
It is true that the trial court has the discretion, in most cases, to use measures such as cautionary instructions, which the jury promises to follow, to avoid the necessity of a mistrial. However, the instruction must be fair to both sides and not add to prejudice against either party. The court's instruction in this case failed to accomplish that goal.
The trial court's instruction to the jury irrevocably impugned the credibility of plaintiff. The primary issue in this case is whether plaintiff's version or defendant's version of the way the accident occurred is more credible.
There is no evidence that plaintiff deliberately dropped the notes in the restroom, intending the jury to read them and be influenced by them. Yet, the trial court's instruction leads the jury to think so. First, plaintiff is mentioned as the author, following which the court specifically says one of the notes was addressed "to the jury." This reference clearly indicates a wrongful intent to violate all rules of fairness or decency to improperly influence the jury. The court compounds the problem by then reminding them (and counsel) that such contact is improper.
A neutral and fair instruction could have been formulated by telling the jury that the notes were not intended for them but were accidentally dropped and to disregard them. There is no basis to infer intentional dropping of the notes, as the only one who has knowledge of her intent is plaintiff, and her explanation is reasonable. If a neutral instruction had been formulated, there would be no need for a mistrial.
Once the unfair instruction was given, a mistrial was required, since misconduct of plaintiff as implied by the prejudicial instruction cannot be erased from the mind of even a conscientious jury as a subjective factor in deciding credibility. In some instances, instructions to disregard and promises to do so are insufficient to cure the problem. This was one of those instances. Furthermore, the instruction was only to ignore the contents of the notes, not the character of a party stooping to that behavior.
The fact that plaintiff had some backing in the jury as to percentage of fault does not prove that the jury's decision was not affected by the instruction concerning the notes. If anything, it leads one to the opposite conclusion, which is that the issue of fault was close enough to be debatable and vitally affected by an inference of bad character of plaintiff. Plaintiff's first assignment of error is sustained.
By the second assignment of error, plaintiff argues that the trial court erred in denying their motion for new trial. Civ.R. 59(A) permits a trial court to grant a new trial upon the motion of either party. We need not discuss the second assignment of error since a new trial is mandated by our disposition of the first assignment of error.
However, as relevant, to the instant case, Civ.R. 59(A) provides:
 Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
(2) Misconduct of the jury or prevailing party[.]
The decision whether to grant or deny a motion for a new trial is left to the discretion of the trial court. Dawson v. Metrohealth Ctr. (1995), 104 Ohio App.3d 654, 656. Consequently, this court will not reverse a trial court's decision on this issue absent an abuse of discretion; i.e., a showing that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Id.
Plaintiff argues that the discovery of the notes and the subsequent improper treatment of the incident by the court, i.e., giving a prejudicial jury instruction and failing to grant a mistrial, constitutes an irregularity in the proceedings which prevented a fair trial. As we have held in our first assignment of error, that contention is well-taken and constitutes an error by which plaintiff was prevented from having a fair trial, thus, also justifying granting of a new trial following the defense verdict.
Plaintiff also points to two remarks made by counsel for defendant during closing argument as being prejudicial and necessitating a new trial. Initially, we note that "great latitude is afforded counsel in the presentation of closing argument to the jury." Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph two of the syllabus. Moreover, a trial court's rulings with respect to closing argument will not be reversed absent an abuse of discretion. Kubiszak v. Rini's Supermarket (1991), 77 Ohio App.3d 679, 688.
Plaintiff first challenges the following statement by defense counsel: "This case is a red light case. That's what the Court told you from the very beginning." (Tr. 214.) Counsel's statement referenced a remark made by the court in voir dire to the effect that cases such as the one before it were sometimes referred to by attorneys as "red light" cases. Plaintiff argues that defense counsel's reference to the court's remark constituted a blatant attempt to coax the jury into believing that the trial court was of the opinion that plaintiff had run a red light and the jury should be of the same opinion. Since the case did involve, as its primary issue, the question of who had the light entitling proceeding, either straight through or on a left turn, the statement was not prejudicial.
The second statement challenged by plaintiff is, as follows:
 One of the things that you are going to receive is an instruction regarding red light. I ask you to read this instruction when you're back there, pay attention to it and what it has to say. I won't read it all to you because I know you all know how to read. What it says is the plaintiff ran a red light. She is negligent as a matter of law. That's evidence, the end of that, the conclusion and that's in that instruction. * * * [Tr. 4.]
Plaintiff contends that defense counsel's statement that the instructions said that "plaintiff ran a red light" was false and was intended to improperly convince the jury that the court believed defendant's version of the facts and the legal conclusions derived therefrom.
In Snyder v. Stanford (1968), 15 Ohio St.2d 31, at 35, the Ohio Supreme Court stated:
 In the instant case, however, assuming the statements of appellees' counsel were objectionable, appellant failed, at the time the statements were made, to object or otherwise apprise the court of the allegedly prejudicial effect of the comments so that any curative action warranted could have been taken by the trial court. Having failed to make proper and timely objections, appellant is precluded from relying on the alleged misconduct of opposing counsel as a basis for reversal of the judgment. * * *.
Defense counsel's statements in closing argument about the court's instruction were improper and objectionable, but plaintiff failed to timely object or to request a curative instruction which could have rectified any problems arising from the improper statement. Pursuant to Snyder, plaintiff has waived any error with regard to defense counsel's closing argument as she failed to object at trial. See, also, Jones v. Olcese (1991), 75 Ohio App.3d 34. However, for reasons previously stated, plaintiff's second assignment of error is sustained.
For the foregoing reasons, both of plaintiff's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
 ______________ McCORMAC, J.
DESHLER, J., concurs.
PETREE, J., concurs in part; dissents in part.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Although the caption of this case correctly reads "plaintiffs"; we will continue to refer to "plaintiff."