OPINION
{¶ 1} Plaintiff-appellant, Marilyn M. Plank ("Plank"), and plaintiff-appellant, Estell Gallagher, appeal from separate judgments of the Franklin County Court of Common Pleas that denied their respective motions for judgment notwithstanding the verdict or, in the alternative, for a new trial, in their separate actions for damages arising out of an automobile accident. Because the trial court properly denied appellants' motions, we affirm.
 {¶ 2} Plank and Estell Gallagher filed separate complaints against defendant-appellee, Gail McKeever ("McKeever"), administrator of the estate of James Gallagher; he died in 2001 of causes unrelated to the accident. Plank also is a named defendant in Estell Gallagher's complaint. The trial court consolidated the cases for ease of trial, but entered two separate post-verdict judgments. Plank appeals from both judgments in appeal Nos. 04AP-1273 and 04AP-1283, while Estell Gallagher appeals from one judgment in appeal No. 04AP-1274. This court consolidated all three appeals.
 {¶ 3} The accident at issue occurred on the evening of October 9, 1998, on southbound Interstate 270 just before the Interstate 70 interchange on the east side of Columbus. Plank was planning to take the I-70 east exit to visit her daughter in Pickerington when she came upon stopped traffic. Because the specifics of the trial testimony are pivotal to resolving the issues in this appeal, we quote portions of it. Plank gave this account:
So at around 7:30 * * * when I was on 270 south and approaching what I knew was going to be my turn off to go to Pickerington. I was just north of the 70 west split and I had just passed the two — the sign indicating that the two right lanes were dedicated to that turn to 270 west [sic]. And I was in the second lane over from the left, and I pulled up behind cars that were obviously not moving. I didn't realize that until I got right behind them. And it turned out that the one was a flatbed truck and there was a Sedan in front of it, and I pulled up behind them.
And as I sat there, I realized that I had to get around them and there was no traffic at all in front of them, but way down the road almost to 70 east exit was another big accident and there were several police cars down there. And I thought that perhaps that truck had stopped because of that accident down the road.
But, anyhow, I decided I would go around them. And I turned my wheels to the left and just at that point I felt a tremendous impact. And I was pushed into the left lane and my — my first thought was due nothing into the median, which I was headed for. [sic] I just instinctively turned my wheels to the right, and I ended up parallel to the car that had been stopped in front of me.
* * *
Q. — did you check your mirrors or look at lanes of traffic prior to actually turning your wheels?
A. I certainly did. I was extremely careful. I knew I was in a very dangerous situation with all that traffic moving. There was a lot of traffic pulling out 70 west.
Q. That's the right two lanes?
A. That's the right two lanes. There was a lot of traffic. So I made very careful that there was nothing around me. I looked in my rearview mirror, my sides [sic] mirror on both sides of the car, there was absolutely nothing around me. And, particularly, in that left-hand lane where I was going to be turning into, I had to be very sure that there was nothing there, and there was absolutely nothing.
(Tr. 43-44, 48-49.)
 {¶ 4} Plank's daughter, Janice Plank, stated that, upon receiving a phone call about the accident, she drove to the scene and arrived about 15 minutes after it happened. She testified regarding the lane configuration of I-270 in the area of the accident and averred that, to her knowledge, no cars had been moved when she arrived. She presented a drawing she made of the area and, during trial, marked for the jury where the vehicles were located and where they sustained damage. In describing the lane configuration at the scene of the accident, she testified as follows:
Q. As you were traveling south on 270 as you did it on that day, October 9, 1998, how many lanes go to the right?
A. Two.
Q. Two lanes go forward, straight?
A. Correct.
Q. Which exit comes first, the 70 west exit right two lanes or the 70 east exit?
A. 70 west exit comes first.
Q. What happens to the left two lanes?
A. Well, you go straight ahead. You have two options. You can keep going straight to Cincinnati or if you are going 70 east, then you head up above a cloverleaf where you have to cross over and then go around that cloverleaf and go down to 70 east underneath to Pickerington or Zanesville or wherever you are going.
Q. At some point do the four lanes split where there is an actual split of the right two lanes and left two lanes?
A. Yes, there is quite a definite split.
Q. Are you especially familiar with this?
A. Yes, I drive it almost every day.
(Tr. 11.)
 {¶ 5} James Gallagher was driving the vehicle that struck Plank's car; his wife, Estell Gallagher, was a passenger. Estell Gallagher did not testify at trial, but in her video deposition, played for the jury, she stated the couple was on the way home to Marietta, planning to take I-270 to I-70 to I-77. According to Estell, she and James "were just driving along * * * coming near our off-ramp, and there was a dark car in front of us. * * * [M]y husband always kind of left a space in between the cars in case of an accident, and this woman cut right in front of us and just went — in other words, went right across in front of us. * * * And my husband clipped her right rear and our front left." (Depo. at 8-9.)
 {¶ 6} Asked if she recalled what lane of travel they were in prior to the accident, Estell Gallagher stated she did not know. The following exchange occurred:
Q. All right. Do you know whether he changed lanes at any time within two minutes prior to the accident?
A. No.
Q. All right. From what lane of travel did this white car come?
A. The left to go towards the right, in front of us.
Q. Okay.
A. She come from the left.
Q. She came from the left lane to your left lane?
A. Well, she was on the outer side of my husband.
* * *
A. And he was on — he's — the driver's side is on the left.
(Depo. at 9-10.)
 {¶ 7} Also presented at trial was an audio tape of a deposition of James Gallagher, who gave this account of the accident:
I was driving, uh, approximately, uh, 65 miles per hour to start with before the accident. And when I give my up — up to I-70, I took my vehicle down to approximately 50 miles per hour, because I didn't want to over run the exit. And, uh, and as I slowed down to come to my exit, a car just ripped in front of me from the driver's side close to the front of my car, and then jammed on the brakes. It was almost impossible for me to avoid an accident, but I did almost avoid it. * * * I clipped in his left — no, his right rear, my left front proximately maybe two foot in from his right side to his — towards the center of his car.
Q. So, did you hit the * * * right rear quarter panel?
A. Right rear. * * * Approximately a foot in.
Q. A foot in from the rear bumper?
A. Yes, towards the center of the trunk.
* * *
Q. And it was with the left front of your vehicle; correct?
A. Correct.
(Audio Tape Tr., 2-3.)
 {¶ 8} At the conclusion of the case on behalf of the defense, the court gave the standard jury instruction for negligence, for failure to maintain an assured clear distance, and for the sudden emergency defense. The trial court, however, did not instruct the jury on issues of comparative or concurrent negligence. In addition, the trial court outlined for the jury the contents and purpose of the first interrogatory that inquired whether James Gallagher, deceased, was negligent and whether his negligence was the sole and proximate cause of the accident. If so, the jury was instructed to sign the general verdict form in favor of all plaintiffs against McKeever, Administrator of the Estate of Gallagher. By contrast, if the jury's answer was no, it was to sign for McKeever.
 {¶ 9} Similarly, the second interrogatory inquired whether Plank was negligent and whether her negligence was the sole and proximate cause of the accident. The trial court instructed that if the jury's answer was yes, it was to sign the general verdict form in favor of plaintiff Estell Gallagher against Plank, but if its answer was no, it was to sign a general verdict form in favor of Plank against Estell Gallagher.
 {¶ 10} When the jury returned, it gave the court both signed interrogatories. The first indicated the jury did not find that James Gallagher was negligent or that his conduct was the sole cause of the accident; the second reflected that the jury did not find that Marilyn Plank was negligent or that her conduct was the sole cause of the accident. The interrogatories prompted the following, as disclosed in the transcript:
[THE COURT]: Still doesn't make sense. So you found — gentleman, come up here. You guys have me confused.
Thereupon, a discussion was held off the record between court and counsel.
THE COURT: So ladies and gentlemen of the jury, what you have done is filed a defense verdict for both parties saying no one is at fault?
THE JURORS: (Shaking heads affirmatively.)
THE COURT: Anything further we need from this jury, folks? No?
Thank you very much, ladies and gentlemen. We appreciate the time you spent on the case.
(Tr. 154-155.)
 {¶ 11} The court then adjourned. Both Plank and Estell Gallagher followed the jury verdict with separate motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. In November 2004, the trial court denied the motions without opinion. Plank and Estell Gallagher each appeal. Plank assigns the following errors:
Assignment of Error Number One
THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING PLAINTIFF-APPELLANT MARILYN M. PLANK'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE REASONABLE MINDS, WHEN CONSTRUING THE EVIDENCE ADDUCED AT TRIAL AND THE FACTS ESTABLISHED BY ADMISSIONS IN THE RECORD MOST STRONGLY IN FAVOR OF DEFENDANT-APPELLEE GAIL McKEEVER, ADMINISTRATOR OF THE ESTATE OF JAMES GALLAGHER, COULD COME TO BUT ONE CONCLUSION AND THAT CONCLUSION FAVORED PLAINTIFF-APPELLANT MARILYN M. PLANK.
Assignment of Error Number Two
THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY DENYING PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL BECAUSE THE JURY INTERROGATORIES AND GENERAL VERDICTS RENDERED BY THE JURY, AND THE JUDGMENT ENTRY ENTERED THEREON ON JANUARY 20, 2004, WERE NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE.
 {¶ 12} Estell Gallagher assigns the following errors:
First Assignment of Error
The trial court erred by denying Plaintiff Estell Gallagher's Motion for Judgment Notwithstanding the Verdict.
Second Assignment of Error
The trial court erred by denying Plaintiff Estell Gallagher's Motion for New Trial.
Third Assignment of Error
The judgment of the trial court is contrary to the manifest weight of the evidence.
 {¶ 13} Because Plank's and Estell Gallagher's first assignments of error both assert the trial court erred in denying their respective motions for judgment notwithstanding the verdict, we address them together.
 {¶ 14} The test for considering a motion for judgment notwithstanding the verdict is the same test applied in a motion for a directed verdict.Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679. A motion for a directed verdict raises questions of law, not factual issues, because it tests the legal sufficiency of the evidence to take the case to the jury. Id. at 679-680; Wagner v. RocheLaboratories (1996), 77 Ohio St.3d 116, 119. When considering a motion for a directed verdict, a court must construe the evidence most strongly in favor of the party against whom the motion is directed. Civ.R. 50(A). The court's disposition of the motion does not involve weighing the evidence or the credibility of the witnesses. Id. Instead, the court must deny the motion where any evidence of substantial probative value favors the nonmoving party, and reasonable minds might reach different conclusions on that evidence. Id.; Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284-285. We thus must determine whether the trial court erred in determining that reasonable minds could reach different conclusions regarding the liability of the various defendants.
 {¶ 15} In many ways, the facts and procedural posture of this case are similar to those in Peck v. Serio, Franklin App. No. 03AP-278,2003-Ohio-6561. In Peck, the plaintiff, an innocent passenger in an auto accident, sued both her driver and the driver of the other vehicle. Each driver defended on the grounds that she had the right of way, and the only evidence offered at trial as to the negligence of either defendant was each driver's testimony claiming the other driver's fault. At the close of evidence, the plaintiff moved for a directed verdict on the basis that the theory of alternative liability required the court to find in her favor against both defendant drivers. The court denied the motion, and the jury returned a verdict in favor of both defendants.
 {¶ 16} On appeal, this court determined that, based on the evidence presented at trial, the plaintiff did not satisfy her initial burden of proving that both defendants were negligent and therefore never triggered application of the alternative liability doctrine. Accordingly, we upheld the jury's finding that neither defendant's negligence proximately caused the plaintiff's injuries, stating that "[t]he result reached by the jury may be unfortunate, but it is not unfair. The court did not err in `allowing the jury to find against an innocent plaintiff' as appellant contends in her first assignment of error. The jury's verdict, in our view, is purely a result of its determination that appellant's evidence was insufficient to prove negligence on the part of either defendant. Our system guarantees only that a litigant will be afforded a fair opportunity to present her case; it does not guarantee that she will win it, even when she is `innocent' or otherwise blameless, as appellant herein surely is." Id. at ¶ 21.
 {¶ 17} Within the parameters of Peck, Plank urges that the jury lost its way because the evidence demonstrated James Gallagher was at fault; Estell Gallagher charges that the evidence should have convinced the jury Plank was at fault. At first blush, it would appear that, if the interrogatories had presented the jury with a third option of concluding that Plank and James Gallagher were concurrently negligent, the jury might have chosen it. Both Plank and Estell Gallagher, however, admit they adopted an all-or-nothing trial strategy, based upon their respective beliefs that only one tortfeasor proximately caused the accident and that no other outcome was acceptable. Their trial strategy would explain the parties' failure to present to the jury an interrogatory permitting a conclusion of comparative or concurrent negligence, and it would also explain the parties' failure to seek further jury deliberations when the trial court asked whether the parties needed anything further from the jury.
 {¶ 18} In light of our holding in Peck, the dearth of evidence presented at trial, and the jury's apparent certainty that both interrogatories should be answered in the negative, the jury's verdict does not reflect the jury's belief that both drivers were to blame, but rather evinces its belief that neither Plank nor Estell Gallagher offered sufficient proof to support their individual theories of negligence. Thus, as in Peck, the plaintiffs lost not because no one caused the accident, but because plaintiffs failed to meet their respective burdens to show, by a preponderance of the evidence, whose negligence was the proximate cause. The transcript underscores our conclusion.
 {¶ 19} For example, only four witnesses testified at trial: Marilyn Plank and Janice Plank, who appeared in person, and Estell and James Gallagher, who appeared by deposition testimony. Janice Plank was the only witness to testify to the configuration of I-270 at the location of the accident, and she did so based upon her personal experience of frequently driving the area and of arriving at the scene that day. Janice Plank's drawing was the only physical evidence diagramming the scene of the accident and the conformation of the highway. Because the drawing was not included in the record, we express no opinion of its quality and accuracy. Nonetheless, it arguably would not carry the same weight as evidence presented by an expert or unbiased witness.
 {¶ 20} Similarly, neither Plank nor Estell Gallagher presented testimony by a law enforcement officer or an accident reconstructionist, either of whom may have been able to offer relevant information or opine regarding the vehicles' location both before and after impact, the damage the vehicles sustained, or the possible cause of the accident. Because the only witnesses to testify offered conflicting testimony about these issues, and because all of the witnesses may have been too close to the situation or too shaken by the accident to clearly remember details, additional evidence would have been useful, even essential, to the jury in deciding this case.
 {¶ 21} Reviewing the case as tried, we cannot say that the trial court wrongly concluded the evidence was insufficient to prove that either Plank or James Gallagher solely and proximately caused the accident. Reasonable minds might reach different conclusions on the evidence presented, as each side presented evidence arguably favorable to it, but not sufficient to convince the jury. As such, the jury appropriately could determine that neither plaintiff proved her case, leading to the conclusion that the trial court properly held that the jury's verdict should stand. We therefore overrule both Plank's and Estell Gallagher's first assignments of error.
 {¶ 22} Plank's second assignment of error asserts the trial court should have granted her motion for new trial because the jury verdict was against the manifest weight of the evidence. Estell Gallagher's third assignment of error likewise charges that the trial court's judgment is against the manifest weight of the evidence. Finally, Estell Gallagher's second assignment of error asserts the trial court erred by denying her motion for new trial. Because these three assignments of error deal with manifest weight questions in the context of a motion for new trial, we address them together.
 {¶ 23} "In deciding a motion for a new trial based on the weight of the evidence, the trial court must weigh the evidence and pass upon the credibility of witnesses. However, the trial court's weighing of the evidence differs from that of the jury in that it is restricted to determining whether manifest injustice has been done and whether the verdict is, therefore, manifestly against the weight of the evidence. The court may not set aside a verdict on the weight of the evidence simply because its opinion differs from the jury's opinion." Jones v. Olcese
(1991), 75 Ohio App.3d 34, 37, jurisdictional motion overruled,62 Ohio St.3d 1456, citing Poske v. Mergl (1959), 169 Ohio St. 70. See, also, Atkinson v. Internatl. Technegroup, Inc. (1995),106 Ohio App.3d 349, appeal not allowed, 74 Ohio St.3d 1525, quotingRohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph three of the syllabus (stating that "in ruling on a motion for new trial upon the basis of a claim that the judgment `is not sustained by sufficient evidence,' the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence"). Kendig v. Martin, Franklin App. No. 02AP-408, 2003-Ohio-1525, ¶ 25
 {¶ 24} Here, we cannot say manifest injustice has been done or the jury's verdict is against the manifest weight of the evidence. A review of the testimony of all four witnesses shows numerous inconsistencies and a lack of agreement about which car was in what lane and at what point in the progression of events leading up to and including impact.
 {¶ 25} Janice Plank could only testify about how the cars were situated after impact, and she stated that both vehicles were in the lane furthest to the left, next to the median and parallel to the two stopped vehicles Marilyn Plank said she had been trying to pass. Marilyn Plank testified that prior to the accident, she was in the second lane from the left and that she turned her wheels to the left as she prepared to go around the stopped vehicles. She did not testify that she actually moved the car forward into the other lane, but only that she was about to do so when she was struck from behind. She also indicated that after impact the vehicles came to rest in the first lane from the left.
 {¶ 26} Estell Gallagher testified that she did not know what lane she and her husband were traveling in prior to impact or whether James Gallagher changed lanes just before the accident. She stated the Plank car came from the left lane going toward the right in front of them just before impact. She also admitted she did not know how many lanes comprised the roadway, she thought there were two people, a man and a woman, in the Plank car, and she had not had a driver's license for 25 years. James Gallagher testified that "a car just ripped in front of me from the driver's side close to the front of my car, and then jammed on the brakes." (James Gallagher Depo. at 2.) He also thought a man and a woman were in the Plank car.
 {¶ 27} By both James and Estell Gallagher's accounts, the Plank vehicle was moving from the left to the right just before impact. By Marilyn Plank's account, she was preparing to move from the lane she was in to the next lane to the left; thus, her vehicle would have been moving from the right to the left, if it moved at all prior to impact. Marilyn Plank's account was supported by Janice Plank's testimony that after impact both vehicles were in the left lane. Although both Gallaghers seemed somewhat confused about some of the circumstances surrounding the accident, their testimony clearly indicates they witnessed the Plank vehicle moving in the direction opposite from that relayed in the version of events given by Marilyn Plank and buttressed by Janice Plank. The differing accounts likely confused the jury, and the trial lacked any unbiased third-party testimony or scientific evidence that might have helped resolve the discrepancies.
 {¶ 28} The trial thus reduced to a "he said/she said" conflict from which the jury was entitled to conclude that the manifest weight of the evidence did not support a finding that either plaintiff proved her case by a preponderance of the evidence. The manifest weight of the evidence is "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them." Black's Law Dictionary (5 Ed.) 1429-1430. Given the evidence presented at trial, we cannot say the evidence so clearly pointed to one driver or the other as the proximate cause of the accident that the manifest weight of the evidence clearly demonstrated the jury should have rendered a verdict in favor of one or the other plaintiff. Thus, the trial court was within its discretion to deny the motions for a new trial. Accordingly, we overrule Plank's second assignment of error and Estell Gallagher's second and third assignments of error.
 {¶ 29} Having overruled all of Plank's and Estell Gallagher's assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.
Judgments affirmed.
Sadler and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.