JACKSON ET AL., APPELLANTS, *v.* BOOTH MEMORIAL HOSPITAL ET AL., APPELLEES.

(No. 53567 — Decided
April 25, 1988.)

*Landskroner & Phillips Co.,
L.P.A.,* and *Lawrence Landskroner,*
for appellants.

*Jacobson, Maynard, Tuschman &
Kalur Co., L.P.A.,* and *Jerome S.
Kalur,* for appellees.

DAVID T. MATIA, J. Plaintiffs-appellants, Gladys Jackson et al., appeal from a jury verdict rendered for defendants-appellees, Martin, Schneider, M.D., Stanley Post, M.D., and Stanley Pollack, M.D.

On February 11, 1981, Debra Jackson was admitted to Booth Memorial Hospital for treatment of high blood pressure. Mrs. Jackson was pregnant at the time of admission and a conservative treatment of bed rest was prescribed by her treating physicians. Approximately two weeks later, Mrs. Johnson was released from the hospital for a weekend visit to her home but was again readmitted to Booth Memorial Hospital on March 1, 1981.

On March 11, 1981, a cesarean section was performed on Mrs. Jackson and a healthy baby girl was delivered. Upon the birth of the child, Mrs. Jackson was treated with five types of drugs: phenobarbital, Demerol, Phenergan, magnesium sulfate, and Apresoline.

At approximately 6:00 p.m. on the evening of March 11, 1981, Mrs. Jackson was observed to be in a deep sleep. However, Demerol, Phenergan, and magnesium sulfate were again administered to Mrs. Jackson. At 3:00 a.m., on the morning of March 12, 1981, Demerol and Phenergan were again administered to Mrs. Jackson. At 5:40 a.m., Mrs. Jackson's blood pressure began to drop, which necessitated the administration of an antidote for magnesium sulfate overdose and cardiopulmonary resuscitation. At approximately 7:00 a.m., Mrs. Jackson expired.

On March 12, 1982, a complaint grounded in medical malpractice and wrongful death was filed in the Cuyahoga County Court of Common Pleas. Discovery was had on the part of the appellants, with the appellees specifically identifying three expert witnesses: Helmut Cascorbi, M.D., Mortimer Rosen, M.D., and Geoffrey Mendehlson, M.D. Of these three experts, only Dr. Mendehlson expressed an opinion as to the cause of Mrs. Jackson's death: cardiac authymia. The appellees' remaining experts denied knowing the cause of Mrs. Jackson's death.

Prior to trial, the appellants filed two motions *in limine* with the trial court.[1] The initial motion *in limine* was an attempt to prevent the appellees' experts from testifying as to a previously unrevealed cause of death. The second motion *in limine* dealt with an attempt to limit the conduct of appellees' counsel during closing arguments.

During the course of trial and over objections of appellants' counsel, each of the appellees' three experts testified that the death of Mrs. Jackson was caused by preeclamptic shock. Said cause of death was discovered after the deposition of the appellees' experts

---

[1] The record fails to reveal that the appellants' two motions *in limine* were filed vis-a-vis recording upon the court's docket. The appellees' brief does reflect that said motions were presented to the trial court. Again, however, the trial court's docket fails to reveal that the trial court ruled on either of the appellants' motions *in limine*.

but prior to trial. However, the appellees failed to inform the appellants of this discovery prior to trial.

On February 4, 1987, the jury returned a defense verdict. In addition, the trial court overruled the appellants' motion for a new trial and a motion for judgment notwithstanding the verdict.

Thereafter, the appellants timely brought this appeal.

## I

The appellants' initial assignment of error is that:

"The trial court erred by not excluding expert testimony regarding the cause of death when defendants failed to supplement discovery responses pursuant to Civ. R. 26(E)(1)(b)."

The appellants specifically argue that the appellees were under a duty to inform the appellants of a change in the deposition testimony of the appellees' experts vis-a-vis the discovery of a new theory for the cause of Mrs. Jackson's death. By failing to disclose the new theory of death, the appellants argue surprise and the inability to effectively cross-examine the appellees' expert witnesses.

Civ. R. 26 provides in part that:

"(E) Supplementation of responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.

"(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response.

"(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through requests of supplementation of prior responses."

The record reveals that only one of the appellees' experts, Dr. Mendehlson, offered a theory at deposition as to the cause of Mrs. Jackson's death. The remaining two experts were unable to provide a theory for the death of Mrs. Jackson. However, all three of the appellees' experts determined after deposition and prior to trial that the cause of Mrs. Jackson's death was preeclamptic shock. Each of the appellees' three experts testified at trial, over objection by appellants' counsel, as to preeclamptic shock.

Upon discovery of the preeclamptic-shock theory, the appellees were immediately obligated, pursuant to Civ. R. 26(E)(2), to inform the appellants of the experts' discovery of a new theory of cause of death.

The Supreme Court of Ohio, in *Jones* v. *Murphy* (1984), 12 Ohio St. 3d 84, 86, 12 OBR 73, 75, 465 N.E. 2d 444, 446, held that:

"One of the purposes of the Rules of Civil Procedure is *to eliminate surprise*. This is accomplished by way of a discovery procedure which *mandates a free flow of accessible information* between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries." (Emphasis added).

In addition, the Supreme Court of Ohio, in *Shumaker* v. *Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St. 3d 367, 370-371, 28 OBR 429, 431-432, 504 N.E. 2d 44, 47-48, held that:

"Civ. R. 26(E)(1) provides that '* * * [a] party is under a duty season-

ably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.' An objective of this rule is to provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced. See *Smith* v. *Ford Motor Co.* (C.A. 10, 1980), 626 F. 2d 784; *Scott & Fetzer Co.* v. *Dile* (C.A. 9, 1981), 643 F. 2d 670.

"* * *

"Expert testimony may be excluded as a sanction for the violation of Civ. R. 26(E)(1)(b). See *Jones* v. *Murphy, supra,* at 86; *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83. In *Shelak* v. *White Motor Co.* (C.A. 5, 1978), 581 F. 2d 1155, 1159, a case involving surprise which had almost identical facts as the case at bar, the court found that the trial court committed an abuse of discretion by allowing a medical expert to testify about a previously undisclosed causal connection between an injury and a subsequent medical problem, stating:

" 'The failure of the plaintiff candidly to reveal his claim of injury * * * goes to the question of damages. Plaintiff's disregard for the federal rules of discovery in this area created a "trial by ambush" which those rules are designed to prevent. * * * [I]f discovery has any purpose, plaintiff's opponent was entitled, upon the unveiling of the * * * contention, to a reasonable opportunity to prepare to defend against it.'

"Similarly in *Scott & Fetzer Co.* v. *Dile, supra,* at 673-674, the court held that it was an abuse of discretion to allow a party to introduce testimony by previously undisclosed witnesses and to use a new theory of the case.

"There appears to be an element of 'ambush' in the present case. Appellee never disclosed that he was asserting the cancer claim prior to trial and, in fact, during the argument on the motion *in limine* immediately preceding the trial, indicated he did not know what the experts would say on that subject. Therefore, appellants had *no discovery on this purported causal connection in spite of diligent efforts toward this end.*" (Emphasis added in part.)

Thus, the elements of surprise and ambush become the focus with regard to whether a free flow of information between the parties has been disrupted by deliberate actions of one of the parties.

Herein, the record does disclose that the appellants were surprised by the new theory of the cause of death as advanced by the appellees' experts at trial. In fact, the failure of the appellees to timely inform the appellants of the discovery of a new theory of cause of death smacks of ambush.

The appellants, through expert testimony, attempted to establish that the death of Mrs. Jackson resulted from the negligent administration of a combination of five drugs. The appellants' experts testified solely to this cause of death and did not address the issue of preeclamptic shock. Had the appellants been aware of the appellees' newly discovered theory of death, appellants' experts would have been able to effectively testify with regard to this counter-theory of death.

In addition, appellants' counsel was not able to effectively cross-examine the appellees' experts with regard to the issue of preeclamptic shock. Thus, the failure of the appellees to timely disclose before trial

the theory of preeclamptic shock prejudiced the appellants.

Initially, the trial court erred by not granting the appellants' motion *in limine* with regard to the testimony of the appellees' experts as to the cause of death not described during deposition. The trial court also erred by failing to sustain the appellants' objections to the testimony of the appellees' experts at trial with regard to preeclamptic shock. The appellants were clearly surprised and damaged by the failure of the appellees to reveal the newly discovered theory of preeclamptic shock prior to trial pursuant to Civ. R. 26(E)(2).

Therefore, the appellants' initial assignment of error is well-taken.

## II

The appellants' second assignment of error is that:

"The trial court erred by allowing defense counsel to engage in misconduct and to make improper arguments during closing argument."

Specifically, the appellants argue that the closing argument of appellees' counsel involved accusations of opposing counsel acting with deliberate attempt to suppress the truth, dishonesty of the appellants' witnesses and comments concerning the veracity of appellants' witnesses. The appellants argue that the closing remarks of appellees' counsel "fanned the flames of prejudice."

This court in *Acceleration Life Assur. Co.* v. *Walsh* (June 4, 1987), Cuyahoga App. No. 52266, unreported, at 12-13, held that:

"* * * counsel is generally afforded broad latitude in closing remarks. *Cusumano* v. *Pepsi Cola Bottling Co.* (1967), 9 Ohio App. 2d 105, 122. Remarks that are not supported or warranted by the evidence and which are calculated to arouse passion or prejudice or are designed to misrepresent the evidence to the extent that there is a substantial likelihood that the jury may be misled may constitute prejudicial error. See *Jones* v. *Macedonia-Northfield Banking Co.* (1937), 132 Ohio St. 341; *Durst* v. *Van Gundy* (1982), 8 Ohio App. 3d 72. But inferences drawn from evidence in the cases are a legitimate subject of argument. See *Coffey* v. *Shenk* (1974), 39 Ohio App. 2d 156, 160. The determination of whether alleged misconduct of counsel was sufficient to taint the verdict with passion or prejudice ordinarily lies within the sound discretion of the trial court. *Lance* v. *Leohr* (1983), 9 Ohio App. 3d 297, 298. 'Before a reviewing court will disturb the exercise of the trial court's discretion, the record must clearly demonstrate highly improper argument by counsel which tends to inflame the jury.' *Id.*, at 298."

A review of the closing argument of the appellees' counsel reveals that the closing remarks were not based upon evidence contained within the record. The remarks of the appellees' counsel did rise to the level of a substantial likelihood of misleading the jury. In addition, the trial court did abuse its discretion in overruling the appellants' objections to counsel's closing remarks. Cf. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140; *Pembaur* v. *Leis* (1982), 1 Ohio St. 3d 89, 1 OBR 125, 437 N.E. 2d 1199.

"Perhaps, prior to the concluding statements, in the absence of objections by counsel for plaintiffs to the improper comments of counsel for defendant Wilson, forbearance on the part of the trial court was appropriate. The concluding statement, however, especially when coupled with the prior improper argument, is so grossly improper as to require *sua sponte* intervention by the trial court under the rule of *Snyder* and *Jones, supra.* As stated in the opinion in *Jones,* at 351:

" 'It may be said unhesitatingly that these records present a case in

which objection or exception to the argument of counsel for plaintiff was not necessary to raise the question of misconduct of plaintiff's counsel. * * * The judge who presides over a cause is not a mere umpire; he may not sit by and allow the grossest injustice to be perpetrated without interference. It is his duty in the executive control of the trial to see that counsel do not create an atmosphere which is surcharged with passion or prejudice and in which the fair and impartial administration of justice cannot be accomplished. It was the duty of the trial court to stop the argument and require counsel to proceed in an orderly and lawyer-like manner.

" '* * *

" 'The conduct of plaintiff's [defendants' in this case] counsel was reprehensible and inexcusable, and, unrebuked as it was, constituted reversible error regardless of the lack of objection.'

"Since the trial court should have intervened at least at the conclusion of the argument by counsel for defendant Wilson, the error in failing to do so, coupled with the error in overruling the objection to the improper comments concerning credibility of Dr. Steinman, mandated that the trial court grant a new trial upon plaintiffs' motion therefor, and that court abused its discretion by overruling the motion for new trial. Accordingly, the assignment of error is well-taken." *Tsitouris* v. *Wilson* (Mar. 20, 1986), Franklin App. No. 85AP-456, unreported, at 13.

Therefore, since the appellants were prejudiced by the closing remarks of the appellees' counsel, the second assignment of error is well-taken.

The judgment is reversed and the cause is remanded.

*Judgment accordingly.*

PATTON, P.J., and DYKE, J., concur.