**O'CONNOR·et al., Appellants,**

**v.**

**CLEVELAND CLINIC FOUNDATION, Appellee.**

[Cite as *O'Connor v. Cleveland Clinic Found.*, 161 Ohio App.3d 43, 2005-Ohio-2328.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84219.

Decided May 12, 2005.

Michael F. Becker, John W. Burnett, and Lawrence F. Peskin, for appellants.

Roetzel & Andress, Anna M. Carulas, Ingrid Kinkopf–Zajac, and Douglas G. Leak, for appellee.

SEAN C. GALLAGHER, Judge.

{¶ 1} Appellants, John O'Connor, his wife Janice, and their three minor children, appeal the trial court's judgment in favor of appellee, the Cleveland Clinic Foundation ("Clinic"), which was entered after the jury returned a unanimous verdict in favor of the Clinic. For the reasons stated herein, we reverse the judgment and remand the cause for a new trial.

{¶ 2} John O'Connor was admitted to the Clinic for surgery to remove a polyp[1] from his colon that was believed to be precancerous. O'Connor was under the care of Dr. Peter Marcello, a Clinic colorectal physician, who performed the initial surgery.

{¶ 3} During the initial laparoscopic[2] surgery, the polyp was removed and the

---

1. A polyp is a growth that can be benign, premalignant, or malignant.

2. Laparoscopy is a procedure in which an abdominal incision is made and a surgeon draws from the abdomen the portion of the bowel where the polyp was found. The advantage of laparoscopy is that it allows the surgeon to clearly see the bowel, without requiring major surgery.

colon was reconnected using a technique called anastomosis.[3] Sometime during this surgery, O'Connor suffered a cautery burn [4] injury to his intestine that went unrecognized and ultimately caused the contents of O'Connor's bowel to spill into his abdominal cavity. This resulted in O'Connor's developing an infection and sepsis.[5]

{¶ 4} As a result of this condition, Dr. Marcello performed a second surgery four days later to repair the leak and then returned the intestine to the abdomen without performing an ileostomy.[6] This was done despite the presence of sepsis. The second anastomosis used to reconnect the intestine in this surgery also broke down, causing peritonitis [7] to set in.

{¶ 5} One week after the second surgery, O'Connor was profoundly ill from severe peritonitis. The contents of O'Connor's bowel were leaking into his abdominal cavity. A third surgery was performed by Dr. Anthony Senagore, in Dr. Marcello's absence. During this surgery, the second anastomosis that had been performed by Dr. Marcello was reversed and was replaced with a temporary ileostomy. As a result of complications from the initial three surgeries, O'Connor was required to have two additional surgeries before he recovered.

{¶ 6} Appellants claimed that the Clinic was liable for Dr. Marcello's alleged medical malpractice because Dr. Marcello, at the time of the initial surgery, did not recognize the damage to the intestine caused by the cautery burn and then failed to properly repair the injury. Appellants further claimed that the procedure performed by Dr. Marcello during the second surgery was the wrong method to correct the initial error to insure proper recovery. The jury returned a verdict in favor of the Clinic.

{¶ 7} Appellants brought this appeal, raising four assignments of error for our review. Appellant's first assignment of error reads as follows:

■ {¶ 8} "The trial court erred in permitting Dr. Marcello, a non party, to give a new expert opinion at trial without first having tendered a report or

---

3. Anastomosis is a technique used to reconnect two parts of the intestine after the removal of a polyp, prior to returning the intestine to the abdomen.

4. A cautery burn is a burn to tissue. A cautery tool is typically used to burn tissue in removing a polyp from a section of colon.

5. Sepsis is a systemic inflammatory response to a bacterial infection.

6. An ileostomy is a diversion of the small intestine through the abdominal wall. Fecal matter is then collected in an attached bag.

7. Perintonitis is a dangerous infection that inflames the abdomen lining that can lead to sepsis and death.

otherwise notified plaintiff's counsel of the substance thereof in violation of Cuy. Cty. C.P. Ct. Loc. R. 21.1 and Ohio R. Civ. P. 26(E)."

{¶ 9} Appellants argue that Dr. Marcello presented a different explanation for why the cautery burn went unnoticed during the initial surgery at his deposition, compared to his testimony offered at trial. During his deposition, Dr. Marcello acknowledged that he had no good explanation for why he had not seen the cautery burn. However, at trial, while acknowledging that it was more likely than not that he had caused the cautery burn, he offered the opinion that the burn was a "conductive" burn,[8] which was not immediately detectable, as an explanation for why he did not discover and repair the burn during the initial surgery.

{¶ 10} In a medical-malpractice case, expert testimony is required to establish the standard of care and to establish whether the defendant satisfied that standard. *Vaught v. Cleveland Clinic Found.* (2003), 98 Ohio St.3d 485, 787 N.E.2d 631, citing *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

{¶ 11} Cuyahoga County Common Pleas Court Loc.R. 21.1(B) requires that nonparty expert reports be submitted to opposing counsel. Nevertheless, when the treating physician is the expert witness, as here, Loc.R. 21.1(C) provides that a trial court has the discretion to accept hospital or office records in lieu of a written expert report should the court determine that to do so would satisfy the requirements of a written report and adequately provide the requesting party with the information that it needs.

{¶ 12} The rule, thus, puts nonparty treating physicians in a unique category, giving trial courts discretion to accept hospital records in lieu of expert reports when, as here, the hospital or treating entity is being sued but the treating physician is not.

{¶ 13} The portion of the rule dealing with treating physicians reads:

In the event the non-party expert witness is a treating physician, the Court shall have the discretion to determine whether the hospital and or office records of that physician's treatment which have been produced satisfy the

---

8. A "conductive" burn was described as a burn in which energy is conducted along a bodily pathway, here the intestine, that involves less heat and energy than a direct "contact" burn. A "conductive" burn would cause damage to the tissue that would not necessarily be apparent at the time of the injury but would progress over time to a full-thickness burn.

requirements of a written report. The Court shall have the power to exclude testimony of the expert if good cause is not demonstrated.

Loc.R. 21.1(C).

{¶ 14} Both parties cite *Vaught v. Cleveland Clinic Found.*, 98 Ohio St.3d 485, 787 N.E.2d 631, albeit for different reasons, a case in which the Supreme Court of Ohio upheld the exclusion of a treating physician's expert-opinion testimony because of the failure to produce an expert report under the former Loc.R. 21.1. The significance of *Vaught* is not in its application of the former Loc.R. 21.1 but in its focus on the importance of disclosure.

{¶ 15} The *Vaught* court recognized that the rule inherently requires a trial court to determine whether the disclosure of medical records in lieu of an expert report "would adequately provide the requesting party with the information that it needs." Id. at 487–488, 787 N.E.2d 631. When a new theory is advanced that was not contained in the medical records or otherwise disclosed, fundamental principles of discovery must be considered. As stated in *Vaught*:

"One of the purposes of the rules of civil procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries."

Id. at 488, 787 N.E.2d 631, quoting *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 86, 12 OBR 73, 465 N.E.2d 444.

{¶ 16} Here, appellants made reasonable inquiry of Dr. Marcello during a deposition, concerning why the injury was not discovered during the operation. The response was clear:

I don't think I can give you a good explanation as to why that injury was not recognized at this time.

{¶ 17} Appellants thus had a reasonable expectation, in the absence of an expert report or a supplement to the deposition testimony or interrogatory responses, that Dr. Marcello's testimony would be consistent with the original medical records or his responses provided in the discovery process.

{¶ 18} Under similar circumstance, the Supreme Court of Ohio held that it was an abuse of discretion to allow a party to introduce testimony of an expert on a new theory for which no discovery had been provided. See *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 370–371, 28 OBR 429, 504 N.E.2d 44. In *Shumaker*, the court stated: "There appears to be an element of 'ambush' in the present case. Appellee never disclosed that he was asserting the cancer claim prior to trial and, in fact, during the argument on the motion in limine immediately preceding the trial, indicated he did not know what the experts would say on that subject. Therefore, appellant had no discovery on this

purported causal connection in spite of diligent efforts toward this end." Id. at 371, 28 OBR 429, 504 N.E.2d 44.

{¶ 19} In support of its decision in *Shumaker*, the court referred to the duty to supplement required by Civ.R. 26(E)(1):

Civ.R. 26(E)(1) provides that ' * * * [a] party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.' An objective of this rule is to provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced.

*Shumaker*, 28 Ohio St.3d at 370–371, 28 OBR 429, 504 N.E.2d 44.

{¶ 20} In *Jackson v. Booth Memorial Hosp.* (1988), 47 Ohio App.3d 176, 178, 547 N.E.2d 1203, we also recognized this duty to supplement, stating: "Upon discovery of the preeclamptic-shock theory, the appellees were immediately obligated pursuant to Civ.R. 26(E)(2), to inform the appellants of the experts' discovery of a new theory of cause of death." We recognized that the introduction of a new theory that has not been disclosed prior to trial "smacks of ambush" and thwarts an opposing counsel's ability to effectively offer a countertheory or to cross-examine the expert. Id.

{¶ 21} Although this court found in *Hinkle v. Cleveland Clinic Found.* (2004), 159 Ohio App.3d 351, 823 N.E.2d 945, that Loc.R. 21.1(C) applied in that case to exclude the treating physicians from the expert-report requirement, application of the rule must be determined on a case-by-case basis. The critical distinction at issue in this case was the failure to disclose the critical new theory explaining Dr. Marcello's conduct in relation to the claim of medical malpractice. This is more than a dispute over conflicts in testimony regarding the underlying medical records; rather, the dispute goes to the heart of the claim and the defense.

{¶ 22} Further, a trial court's application of the rule must be reviewed in accordance with the abuse-of-discretion standard. *Savage v. Correlated Health Serv., Ltd.* (1992), 64 Ohio St.3d 42, 591 N.E.2d 1216; *Oliver v. Metrohealth Med. Ctr.* (Dec. 12, 1996), Cuyahoga App. No. 70347, 1996 WL 715495. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 23} In this instance, the trial court abused its discretion by allowing Dr. Marcello to offer a new opinion on the possible cause of the cautery burn. The

failure to disclose the new theory in either an expert report, as a supplement to Dr. Marcello's deposition, or by supplementing responses to original interrogatories distorted the level playing field.

{¶ 24} We respectfully disagree with the dissenting view that Dr. Marcello's testimony, at both his deposition and the trial, on the critical issue of the failure to recognize the cautery burn involved statements of fact and not opinion. Further, we do not believe that an opinion can be viewed as mere "speculation" simply because it is not expressed in terms of a medical probability.

{¶ 25} There is little question that Dr. Marcello was both a "fact" and an "expert" witness. His testimony at trial involved a new theory on causation that should have been disclosed prior to trial. Lastly, appellants' expert, Dr. Greenberg, offered testimony that was markedly different from that of both Dr. Marcello and Dr. Whalen. We decline to excuse the failure to disclose Dr. Marcello's revised view on causation as the treating physician, under the guise of Dr. Whalen's purported testimony on this subject.

{¶ 26} Upon review of the record in this case, we find that appellants were surprised and prejudiced by the new theory advanced by Dr. Marcello. Thus, appellee violated the discovery rules and Loc.R. 21.1, whose purpose is to prevent surprise.

{¶ 27} Lastly, we respectfully reject the Clinic's view that the failure to file the original deposition transcripts is fatal to appellants' claim. The Clinic cites this court's decision in *Maloney v. Day* (Aug. 6, 1998), Cuyahoga App. No. 73037, 1998 WL 456501, in support of this view. Nevertheless, *Maloney* is distinguishable from this case. Here, Dr. Marcello was specifically asked on the record at trial about his original answer in his deposition. He acknowledged what his initial view had been and then offered his new opinion on the possible reason for his failure to detect the cautery burn. Under these facts, the original answer was readily discernable from the trial transcript and did not require production of the deposition transcripts to identify the new theory or inconsistency.

{¶ 28} For these reasons we find that appellants' first assignment of error has merit, and we remand the case for a new trial.

Judgment reversed<br>and cause remanded for a new trial.

CALABRESE JR., J., concurs.

NAHRA, J., dissents.

JOSEPH J. NAHRA, J., retired, Eighth District Court of Appeals, sitting by assignment.

50

JOSEPH J. NAHRA, Judge, dissenting.

{¶ 29} I respectfully dissent from the majority's decision to reverse the trial court's judgment, because I do not believe that the court erred by denying the motion in limine to preclude the Clinic's treating physician, Dr. Peter Marcello, from giving an expert opinion with respect to his failure to notice the cautery burn.

{¶ 30} Decisions relating to the admission of testimony are reviewed for an abuse of discretion. An abuse of discretion is more than simply a disagreement with the court's actions but a finding that the court acted with a perversity of will, passion, prejudice, partiality, or moral delinquency. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748.

{¶ 31} Dr. Marcello testified at trial that it was "possible" that the cautery burn would not have manifested itself for several days after the procedure. This statement was so speculative that it could not reasonably be considered to have been the product of a statement of opinion; hence, any failure to divulge it to counsel in advance of trial would not have been required. While others might disagree with that conclusion, the court was within its discretion to view the statement in that manner, and a mere disagreement over a decision does not show a "perversity of will" necessary to find an abuse of discretion.

{¶ 32} Moreover, the court would have been acting within its discretion if it had found that any error relating to Dr. Marcello's statement was nonprejudicial, since the Clinic had previously presented the testimony of another expert, Dr. Whalen, on the same point. His opinions are not challenged as being undivulged, so there can be no credible claim of "surprise" stemming from the statement. Indeed, plaintiff's counsel was very clearly prepared to rebut Dr. Marcello's statement, as he met the testimony with reference to Dr. Marcello's contrary deposition testimony and medical texts for the contrary proposition. To overturn a jury verdict on a mere disagreement is not a proper application of the abuse-of-discretion standard.