[Cite as *Long v. Harding*, 2021-Ohio-4240.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JEFFREY LONG, et al., | : | CASE NO. CA2020-11-120 |
| Appellants, | : | O P I N I O N<br>12/6/2021 |
| | : | |
| - vs - | : | |
| | : | |
| MICHAEL J. HARDING, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV-2018-03-0569

The Moore Law Firm, and Daniel N. Moore and Kelly W. Thye; Paul W. Flowers Co., L.P.A., and Paul W. Flowers and Louis E. Grube, for appellants.

Subashi, Wildermuth & Justice, Nicholas E. Subashi and Lauren K. Epperley, for appellee.

**M. POWELL, J.**

{¶ 1} Appellants, Jeffrey Long ("Jeffrey") and his wife Karen Long ("Karen"), appeal a decision of the Butler County Court of Common Pleas in a personal-injury action for refusing to excuse a prospective juror for cause, denying the Longs' motion to exclude the testimony of an expert witness, and splitting costs between Karen and appellee, Michael Harding ("Harding").

{¶ 2} This case arose from an automobile accident that occurred on March 10,

2016. Jeffrey was driving his 2015 Cadillac Escalade northbound on State Route 4; Harding was driving his 2004 Chevrolet Silverado southbound on State Route 4. Harding swerved left of center to avoid a vehicle stopped on the road in his path of travel. As Harding's vehicle was heading for Jeffrey's Cadillac, Jeffrey swerved right to avoid a head-on collision. Nonetheless, Jeffrey's Cadillac and Harding's Chevrolet sideswiped each other.

{¶ 3}   On March 8, 2018, Jeffrey filed a personal-injury complaint against Harding, alleging negligence and seeking damages for the injuries he sustained as a result of the car accident. Subsequently, Karen asserted a loss-of-consortium claim against Harding in an amended complaint. Prior to trial, Harding admitted negligence; therefore, the only issues at trial were proximate cause and damages. Jeffrey sought damages for past and future medical expenses, past and future pain and suffering, and past and future loss of ability to perform usual activities. Karen sought damages for loss of Jeffrey's services. In all, the Longs sought damages of $607,830.52.

{¶ 4}   On October 12, 2020, the matter proceeded to a six-day jury trial. During voir dire, the Longs challenged four prospective jurors for cause, including Juror 929. The trial court denied these challenges for cause; the Longs used their three peremptory challenges to remove three prospective jurors, but not Juror 929. Harding used his three peremptory challenges to remove three other prospective jurors. At trial, Jeffrey, Karen, and one expert witness testified on behalf of the Longs. Harding and two expert witnesses testified on behalf of Harding.

{¶ 5}   Jeffrey is a master goldsmith, designs jewelry and repairs jewelry, watches, and clocks, and owns his own business. His job requires that he perform a great deal of benchwork, in addition to the administrative tasks involved in conducting a business. Jeffrey testified that he immediately experienced back pain after the accident and that upon exiting his Cadillac, he fell down as he was putting on his jacket. Jeffrey obtained a loaner vehicle

from the Cadillac dealership, returned home, and told Karen what had happened. At Karen's suggestion, Jeffrey drove to the emergency room ("ER") where he reported having numbness in his buttocks and requested an MRI. ER personnel advised him to consult with his primary care physician.

{¶ 6} The Longs presented the testimony of Dr. Marc Orlando, a physiatrist. Dr. Orlando testified that Jeffrey's symptoms persisted and grew worse with time. He noted that Jeffrey was experiencing back pain and numbness travelling down his legs consistent with a pinched nerve. A September 2016 MRI revealed that Jeffrey suffered from a disc herniation at L5-S1, resulting in significant nerve root impingement. Dr. Orlando opined that the disc herniation was the result of the March 10, 2016 car accident with Harding. Jeffrey was initially treated with physical therapy and epidural injections but eventually underwent a laminectomy and discectomy. Nevertheless, his symptoms returned within six weeks after the surgery. A new MRI revealed "significant disc space collapse with a foraminal disc and a disc bulge." Jeffrey testified that his only option is to have a second surgery to install a spinal cord stimulator, remove a disc, and fuse his spine. Jeffrey testified that as a result of the car accident, he did not do bench work at the jewelry store for two weeks, can no longer sit at the workbench for extended time periods, fatigues easily, and can no longer engage in his daily activities. He further testified he can no longer help with household chores such as shopping, house cleaning, cooking, and doing dishes. Karen testified that she has to perform these tasks alone.

{¶ 7} Harding presented contrary evidence. Specifically, Jeffrey neither mentioned to his medical providers that he fell down after exiting his Cadillac after the accident nor testified that he did so in his discovery deposition. The ER doctor's report reflects that it was a relatively minor mechanism of injury, that Jeffrey ambulated without difficulty, and that Jeffrey's complaints were so minor that no x-rays or similar diagnostic tests were ordered.

Upon his discharge from the ER, Jeffrey drove to his jewelry store and was able to work all day. Harding also presented evidence that four months after the accident, Jeffrey drove his family to Florida in a 12-passenger van. The evidence included social media posts showing a happy and smiling Jeffrey.

{¶ 8} Harding presented the testimony of Dr. Steven S. Wunder, a licensed, board-certified medical doctor specializing in Physical Medicine and Rehabilitation and injury/medical causation for over 40 years. Dr. Wunder testified that: (1) Jeffrey had sustained a soft tissue neck and back strain as a result of the March 10, 2016 car accident; (2) Jeffrey's nine physical therapy visits post-accident were an appropriate treatment; (3) Jeffrey's back surgery was not causally related to the car accident because the mechanism of the accident had not been shown to cause the injury or aggravate an underlying degenerative disc disease; (4) given the lack of any initial symptoms of sciatica, the car accident was not the cause of the traumatic disc herniation; and (5) the disc herniation could not be causally linked to the car accident given the one-to-two-month delayed onset of symptoms.

{¶ 9} Harding also presented the testimony of Douglas Morr, a biomechanical engineer. Morr testified that despite Jeffrey's claim that the car accident involved "significant contact," the sideswipe contact involved minimal overlap and no "shifting components" in either vehicle. Explaining his calculation of the motion (kinematics) and forces (kinetics) Jeffrey experienced in the accident, Morr opined that the motion experienced by Jeffrey would not have been outside the normal range of motion that he would encounter in daily activities, such as getting in and out of a chair. Morr further opined that the forces Jeffrey experienced in the accident would not have been outside the normal range of forces that Jeffrey would experience in walking down stairs, jogging, or walking briskly. Morr testified that the forces were not enough to cause a significant injury such as

a disc herniation.  Morr further testified that a one-time loading event does not cause a disc herniation absent failure of other structures first, including bones.

{¶ 10} On October 19, 2020, the jury returned a unanimous verdict of $7,296.02 in favor of Jeffrey upon his negligence claim, consisting of $5,296.02 for past medical expenses and $2,000 for past pain and suffering.  The jury awarded no damages for Jeffrey's future medical expenses, future pain and suffering, and past and future loss of ability to perform usual activities.  The jury returned a unanimous verdict in favor of Harding upon Karen's loss-of-consortium claim.  Following the verdict, the trial court issued a final judgment entry granting judgment in favor of Jeffrey upon his negligence claim and granting judgment in favor of Harding upon Karen's loss-of-consortium claim.  The trial court ordered costs to be split between Karen and Harding.

{¶ 11}  The Longs now appeal, raising three assignments of error.

{¶ 12}  Assignment of Error No. 1:

{¶ 13}  THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS BY DENYING THE MOTION TO STRIKE JUROR 929.

{¶ 14}  The Longs argue that the trial court erred in failing to excuse Juror 929 for cause because that juror "expressed an unmistakable bias against those seeking compensation after having been injured."  In particular, the Longs cite that juror's expressed belief that personal-injury plaintiffs "take advantage of the situation to get as much as they can" and "push it as far as to get the most they can," and that if plaintiffs are "making it up, and you award them money, then yes, I would have a problem * * * giving them money."

{¶ 15}  R.C. 2313.17 governs challenges of jurors for cause.  As applicable here, R.C. 2313.17(B)(9) provides that a prospective juror may be excused for cause when that person "discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court."  Additionally, R.C. 2313.17(D)

provides that

> any petit juror may be challenged on suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render the juror at the time an unsuitable juror. The validity of the challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased.

{¶ 16} R.C. 2313.17(B)(9) "requires the court to make a subjective determination about a potential juror's fairness and impartiality and therefore requires the exercise of judicial discretion." *Hall v. Banc One Mgt. Corp.*, 114 Ohio St.3d 484, 2007-Ohio-4640, ¶ 1. "The determination of whether a juror is impartial or biased involves a judgment of credibility, which may not be apparent from the record on appeal. Therefore, a reviewing court will defer to the trial judge who sees and hears the juror." *Hunt v. E. Cleveland*, 8th Dist. Cuyahoga No. 105953, 2019-Ohio-1115, ¶ 37. A trial court has broad discretion in determining whether to remove a prospective juror for cause. *Gurley v. Nemer*, 9th Dist. Summit No. 21965, 2004-Ohio-5169, ¶ 5. A trial court's ruling on a challenge for cause will therefore not be disturbed on appeal absent an abuse of discretion. *Id.* at ¶ 6. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). When applying this standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

{¶ 17} At the beginning of voir dire, the trial court questioned the prospective jurors regarding bias, impartiality, and fairness as follows: (1) regarding preconceived incorrect ideas as to what the law is or ought to be, "If you have such ideas and thoughts, can each of you commit to setting them aside?" (2) "Is there anyone that has any concern that they would not be able to lay aside any bias, prejudice, or sympathies that they would have, because none of that will be able to have an impact on your deliberations, and that's, in fact, prohibited?" (3) "Is there anyone that feels that they would not be able to base their

- 6 -

decision solely upon the facts that are testified to by the witnesses, and the exhibits that are admitted into evidence, and the law that the Court gives to you?" and (4) "Is there anyone that feels that they need to bring to my attention any reason why they believe that they cannot render a fair and impartial decision in this case?" No juror responded in the negative to the first question; no juror responded affirmatively to the other questions.

{¶ 18} During voir dire, counsel for the Longs questioned prospective jurors about people "making claims up" and trying to either exaggerate injuries or "make it look like it's more than what it is." Beginning with that portion of voir dire, the Longs' attorney continually used the term "bias" or the phrase "little bit of bias" until the trial court eventually directed him to cease using the term as the court had not yet instructed the jury on bias. The following exchange took place between the Longs' attorney and Juror 929:

> JUROR 929: I do have a feeling people look at car accidents as a way to get money, or getting hurt by someone else causing it. But I don't want to just say a car accident, that's not fair. If somebody else caused your injury in some way, I feel like sometimes they look at it and say, I can plan something and see if I can get money from the person or from their insurance or somehow.

> [COUNSEL]: Okay. So what you're telling me is in a personal injury realm in general, not just car accidents, but including car accidents. When somebody's hurt as a result of the wreck or something like that, you believe that oftentimes people will try to take advantage of the situation to get as much as they can?

> JUROR 929: Yes.

> [COUNSEL]: Is that what you're saying?

> JUROR 929: Yes.

> [COUNSEL]: Okay. And that you believe that they push it further than they should?

> JUROR 929: I think they push it as far as to get the most they can.
> [COUNSEL]: Okay. All right. And does that feeling that you have, is that similar to Juror No. 586, this feeling that maybe it

creates a little bit of bias in you about this process – not the process, but the personal injury claims?

JUROR 929: I would say yes.

[COUNSEL]: Okay. So when you're sitting down and you're thinking about this claim, or any claim. Let's just forget that you're here about this case, any case, you're going to have just that little bit of bias in your head about this personal injury claim may be one of those where somebody is pushing more than they should?

JUROR 929: Yes.

[COUNSEL]: Okay. And you might try to put it aside, just like over here, but it's still going to be there, and you're still going to have that little bit of bias; is that right?

JUROR 929: Yes.

{¶ 19} Counsel for the Longs subsequently asked the prospective jurors whether anyone "ha[d] a real problem with somebody who says you just got to look at the facts, or a case-by-case analysis, and set aside the bias thinking we just went through?" No juror responded to the question.

{¶ 20} Counsel for the Longs then asked whether anyone was "uncomfortable awarding money damages to somebody in a lawsuit where there's personal injury? [A]nyone uncomfortable, even a little bit of discomfort, saying a certain person should get money as a result of having an injury?" Juror 929 replied,

JUROR 929: "I mean, if you feel like they're making it up, and you award them money, then yes, I would have a problem* * * giving them money."

[COUNSEL]: Okay. That goes back to the bias situation. If somebody is pushing something they shouldn't, they're making it up, or they're fraudulent claims, then of course they shouldn't get money.

JUROR 929: Correct.

{¶ 21} Harding's counsel also questioned prospective jurors regarding bias,

- 8 -

impartiality, and fairness as follows: (1) "Will everyone try their hardest to [keep an open mind]?" (2) "recognizing that we all have implicit biases, * * * will you all try your very best to put that aside and decide this case * * * on the facts and * * * the laws[.]  Will all of you do that?" and (3) "Will each and every one of you make your very best effort to treat each party to this lawsuit fairly and impartially, and to the best of your human ability, to do justice to each of them?  Will all of you try your hardest?"  No juror responded in the negative to the foregoing questions.  As stated above, counsel for the Longs subsequently challenged Juror 929 for cause.  The trial court denied the challenge for cause.

{¶ 22}  Viewing the totality of the voir dire proceedings and considering the deference to which the trial judge is entitled in seating a jury, we find that the trial court did not abuse its discretion when it refused to excuse Juror 929 for cause.

{¶ 23}  Notwithstanding the continual use of the term "bias" by the Longs' attorney when questioning Juror 929, that juror's answers do not indicate that she could not be a fair and impartial juror, or that she would not follow the law as given by the trial court.  Rather, Juror 929 simply expressed her *feeling* that personal-injury plaintiffs *sometimes* make up claims or exaggerate their injuries in order to get as much money as they can.  Juror 929 also expressed skepticism or reticence toward awarding money damages for such fraudulent claims.  While Juror 929 expressed skepticism regarding potential fraudulent claims and resulting damage awards, she never stated she could not be impartial in the case at bar.  Her answers were an implicit recognition that a plaintiff bears the burden of proof and disclosed her intent to scrutinize evidence rather than blindly accept it.

{¶ 24}  Furthermore, Juror 929 actively participated during voir dire, raising her hand multiple times during questioning by the Longs' attorney.  By contrast, the record indicates that she did not respond to the trial court's questions regarding bias, impartiality, and fairness quoted above or Harding's counsel's questions regarding the same.  Likewise, the

record shows that Juror 929 did not answer or raise her hand when counsel for the Longs asked whether anyone "ha[d] a real problem with somebody who says you just got to look at the facts, or a case-by-case analysis, and set aside the bias thinking we just went through?"

{¶ 25} The trial court was in the best position to observe the demeanor of Juror 929 and evaluate firsthand the sincerity of her responses to questions. *Berk*, 53 Ohio St.3d at 169. As long as a trial court is satisfied that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause. *See Giusti v. Felten*, 9th Dist. Summit Nos. 26611 and 26695, 2014-Ohio-3115; *Gurley*, 2004-Ohio-5169.

{¶ 26} In support of their argument that the trial court abused its discretion in failing to excuse Juror 929 for cause, the Longs cite *Klem v. Consol. Rail Corp.*, 191 Ohio App.3d 690, 2010-Ohio-3330 (6th Dist.). In that case, the appellant argued that the trial court erred when it failed to excuse two jurors for cause during voir dire. These jurors were asked whether they could follow the Federal Employers Liability Act, which had abolished the assumption of the risk. The transcript of the voir dire proceedings revealed that the two jurors "had difficulty setting aside the concept of assumption of the risk." *Id.* at ¶ 105. One juror questioned the validity of the law specifically appliable to the case and acknowledged it would be "difficult" to accept the trial judge's instructions on that score, in his words, "[p]otentially" making it harder for the plaintiff to prove his case. *Id.* at ¶ 106-118. The other juror admitted having that same issue and stated that his disagreement with the law "would make it far more difficult" for plaintiff's counsel to prevail. *Id.* at ¶ 120-127. Unlike the jurors in *Klem*, Juror 929 at no time expressed an unwillingness to follow applicable law. *Klem* is therefore inapplicable.

{¶ 27} The Longs also assert "it is entirely likely that Juror 929's sentiments had an impact on the jury's decision * * * to award [Jeffrey] a nominal recovery for past pain and

suffering," and particularly on two other jurors who had expressed somewhat different but similar views as Juror 929. Juror 960 expressed irritation that his insurance company had once chosen to pay a personal-injury claim rather than contest it. While Juror 475 expressed frustration that it is sometimes easier to pay out claims than to fight them, that juror further stated he or she "would look at each case separately and study the evidence." The Longs did not seek to excuse Jurors 475 and 960 for cause or otherwise. Additionally, the record does not reflect that Juror 929 exerted undue influence upon the jury as a whole or any individual juror during jury deliberations. The Longs' argument merely invites us to speculate regarding the jury's deliberations and we refuse to do so.

{¶ 28} The Longs' first assignment of error is overruled.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED BY DENYING THE MOTION TO EXCLUDE THE TESTIMONY OF STEVEN S. WUNDER, M.D.

{¶ 31} The Longs argue that the trial court erred in allowing Dr. Wunder to testify as a defense expert because they were not provided with the materials he relied upon in forming his opinion and which they had sought via discovery and subpoena.

{¶ 32} Harding identified Dr. Wunder as an expert witness he would present at trial. In 2019, Dr. Wunder reviewed Jeffrey's medical records, conducted an independent medical examination, and prepared an initial 11-page report containing his findings and opinion followed by a 2-page supplemental report. Dr. Wunder concluded that Jeffrey sustained a neck and back sprain in the March 10, 2016 car accident, that Jeffrey had pre-existing and longstanding degenerative disc disease, and that Jeffrey's disc herniation and subsequent surgery could not be causally linked to the accident. Included in the reports were references to materials such as the NEXUS criteria, the Braford-Hill criteria, and the AMA Guides Newsletter. Both reports were provided to the Longs.

{¶ 33} The videotaped trial deposition of Dr. Wunder was conducted on February 19, 2020. Prior to the deposition, the Longs subpoenaed Dr. Wunder to produce all articles, texts, and other reference materials he had consulted and relied upon in forming his opinion. The Longs further filed a request for production of documents upon Harding seeking the same materials set forth in the subpoena. During his deposition, Dr. Wunder testified that disc herniations in car accidents had been extensively studied and that there was no indication that rear, side, or frontal impacts cause disc herniation. Dr. Wunder stated he was relying upon the Bradford-Hill criteria, the NEXUS criteria for cervical spine imaging, the Canadian criteria for head CT imaging, the medical literature in general, studies by the Society of Automotive Engineers, and various national and international guidelines for whiplash associated disorder, including guidelines out of Australia.

{¶ 34} On February 28, 2020, dissatisfied with Dr. Wunder's response to their subpoena and Harding's failure to produce the materials relied upon by Dr. Wunder, the Longs moved to exclude the testimony of Dr. Wunder as a defense expert. The Longs asserted that Dr. Wunder's "failure to produce the materials he referenced and relied upon in forming his opinions, in violation of the Civil Rules and the subpoena served upon him in advance of his trial deposition" mandated the exclusion of his testimony. The Longs' motion was denied by a magistrate on September 21, 2020. The Longs filed objections to the magistrate's decision, arguing that Dr. Wunder was required to produce the basis of his opinion as an expert witness under Civ.R. 26 and that his failure to produce the materials he cited and relied upon would prevent the Longs from demonstrating "the fallacy of Dr. Wunder's opinions" to the jury. On October 8, 2020, the trial court overruled the Longs' objections, "not[ing] that there was not any kind of motion to compel or anything else that would have advised the Court that there was some kind of a discovery issue." The Longs renewed their objections to Dr. Wunder's testimony prior to his deposition being played for

the jury. The trial court once again overruled the objections.

{¶ 35} It is well established that a trial court has broad discretion over discovery matters. *See Mezatasta v. Ent. Hill Farm*, 6th Dist. Erie No. E-15-037, 2016-Ohio-3371. "The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. A reviewing court's responsibility is merely to review these rulings for an abuse of discretion." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 1996-Ohio-159. "Although the decision to impose discovery sanctions is a matter within the sound discretion of the trial court, 'the exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise.'" *Grady v. Charles Kalinsky, D.D.S., Inc.*, 165 Ohio App.3d 306, 2005-Ohio-5550, ¶ 14 (8th Dist.), quoting *Nickey v. Brown*, 7 Ohio App.3d 32, 34 (9th Dist.1982).

{¶ 36} Civ.R. 26 sets forth general provisions governing discovery. Regarding the disclosure of expert testimony, Civ.R. 26(B)(7)(c) provides that "a party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. The report of an expert must disclose a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify." Dr. Wunder's initial 11-page report and supplemental 2-page report identify his opinions as well as the basis and reasons for them and therefore comply with Civ.R. 26(B)(7)(c).[1]

{¶ 37} As stated above, the Longs subpoenaed Dr. Wunder to produce all articles, texts, and other reference materials he had consulted and relied upon in forming his opinion.

---

1. Effective July 1, 2020, former Civ.R. 26(B)(5) was modified and renumbered as Civ.R. 26(B)(7). In support of their February 2020 motion to exclude Dr. Wunder's testimony for failure to produce materials, the Longs cited former Civ.R. 26(B)(5) which provided that a party may discover "the expert's opinions and the grounds therefor[.]" Dr. Wunder's reports identify his "opinions and the grounds therefor" and therefore complied with former Civ.R. 26(B)(5).

Pursuant to Civ.R. 34(C), and subject to the scope of discovery under Civ.R. 26(B), any party seeking documents from a non-party may compel their production by way of a subpoena in accord with Civ.R. 45. "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Civ.R. 45(E).

{¶ 38} The Longs also filed a request for production of documents upon Harding seeking the same materials set forth in the subpoena. Civ.R. 34(A) provides that any party may serve on any other party a request to produce any designated materials in the possession, custody, or control of the party upon whom the request is served. If the party upon whom the request is served fails to produce and permit inspection of the requested materials, then Civ.R. 37(A)(3) allows the requesting party to move for an order to compel discovery. However, before a court may sanction a party for a discovery violation, the court must have issued an order to compel discovery. *Rogers v. Credit Acceptance Corp.*, 9th Dist. Lorain No. 11CA010141, 2013-Ohio-1097, ¶ 10. Likewise, "[p]ursuant to Civ.R. 37, before a party or his counsel may be subject to the sanction of prohibiting his expert witness from testifying, such person or counsel must be in default of an 'order' by the trial court." *Grady*, 2005-Ohio-5550 at ¶ 17. Sanctions provided for in Civ.R. 37(B) result from a violation of a discovery *order,* not merely from a discovery request. *Grenga v. Bank One, N.A.*, 7th Dist. Mahoning No. 04 MA 94, 2005-Ohio-4474, ¶ 23.

{¶ 39} We find that the trial court did not abuse its discretion when it denied the Longs' motion to exclude Dr. Wunder's testimony as a sanction for discovery violation. Other than filing their motion to exclude Dr. Wunder's testimony, the Longs made no attempts to informally resolve the dispute regarding production of the materials and made no efforts to enforce their discovery rights. Specifically, the Longs did not request or conduct a discovery deposition of Dr. Wunder to inquire about the materials he relied upon

in forming his opinion, did not move to have Dr. Wunder held in contempt for failing to comply with the subpoena, did not move to compel discovery, and did not otherwise involve the trial court in the dispute and enlist its aid in obtaining the materials. The Longs further permitted their motion to exclude Dr. Wunder's testimony to languish from its filing on February 28, 2020, until it was considered by the magistrate on September 21, 2020, only three weeks before trial began. The Longs' failure to afford the trial court the opportunity to remedy the alleged discovery violation in a timely manner precludes them from complaining when the trial court, in its discretion, declined to exclude Dr. Wunder's testimony as a sanction.

{¶ 40} The Longs argue that Dr. Wunder never objected to the subpoena nor moved to quash it on the basis of undue burden under Civ.R. 45. In response to the subpoena, Dr. Wunder submitted his curriculum vitae, handwritten notes, records from his examination of Jeffrey, his invoices, and financial records. Regarding the articles, texts, and other reference materials he had consulted and relied upon in forming his opinion, Dr. Wunder's deposition indicates his belief he had complied with the discovery request. Dr. Wunder testified he had prepared and had his office manager send a two-page list of resources he had used. Counsel for the Longs then notified Dr. Wunder he had not received the list. Following Dr. Wunder's deposition, the Longs made no further attempts or efforts to resolve the matter and obtain the requested materials and instead moved to exclude Dr. Wunder's testimony.

{¶ 41} The Longs cite several cases in support of their argument that the trial court erred in failing to exclude Dr. Wunder's testimony. However, those cases all involved situations where the expert witness expressed or sought to express new or different opinions at trial than were disclosed prior to trial. *See Cox v. MetroHealth Med. Ctr. Bd. of Trustees*, 8th Dist. Cuyahoga No. 96848, 2012-Ohio-2383; *Weimer v. Anzevino*, 122 Ohio

App.3d 720 (7th Dist.1997); *Jackson v. Booth Memorial Hosp.*, 47 Ohio App.3d 176 (8th Dist.1998); *Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367 (1986); *Walker v. Holland*, 117 Ohio App.3d 775 (2d Dist.1997); *Waste Mgt. of Ohio, Inc. v. Mid-America Tire, Inc.*, 113 Ohio App.3d 529 (2d Dist.1996); *Amerifirst Savings Bank of Xenia v. Krug*, 136 Ohio App.3d 468 (2d Dist.1999); *O'Connor v. Cleveland Clinic Found.*, 161 Ohio App.3d 43, 2005-Ohio-2328 (8th Dist.); and *Bradford v. Callaghan*, 8th Dist. Cuyahoga No. 56310, 1989 Ohio App. LEXIS 4979 (Nov. 30, 1989). That is not the case here. Dr. Wunder's opinion expressed at trial was identical to the opinion expressed in his reports which were timely disclosed to the Longs. The cases above are therefore not applicable here.

{¶ 42} In support of their argument that the trial court erred in failing to exclude Dr. Wunder's testimony, the Longs also cite an opinion from this court, *Marcus v. Rusk Heating & Cooling, Inc.*, 12th Dist. Clermont No. CA2012-03-026, 2013-Ohio-528. In that case, we held that the trial court did not abuse its discretion in excluding an expert's opinion because the study he relied upon was not provided to the trial court. *Marcus* did not involve a discovery violation. Rather, it involved whether the expert's opinion was scientifically reliable under Evid.R. 702 and whether the expert should be permitted to express an expert opinion under the standard set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). *Marcus* is therefore not applicable.

{¶ 43} The Longs do not identify how they were prejudiced by Dr. Wunder's testimony. The record does not reflect and the Longs do not argue how they would have more effectively cross-examined Dr. Wunder if the materials had been provided to them. We note that two of the sources relied upon by Dr. Wunder, the NEXUS criteria for cervical spine imaging and the Canadian criteria for head CT imaging, are both specifically referenced in the ER doctor's report on March 10, 2016, the day of the accident.

- 16 -

Furthermore, the Longs fail to account for the testimony of defense expert Morr, a biomechanical expert who offered opinions similar to those of Dr. Wunder.

{¶ 44} The Longs' second assignment of error is overruled.

{¶ 45} Assignment of Error No. 3:

{¶ 46} THE TRIAL COURT ERRED BY SPLITTING COSTS BETWEEN PLAINTIFF KAREN LONG AND DEFENDANT MICHAEL HARDING.

{¶ 47} The Longs argue that the trial court abused its discretion by splitting the costs between Karen and Harding. The Longs assert that because Karen's loss-of-consortium claim is derivative of Jeffrey's personal-injury claim, the trial court's order improperly "requires him, the prevailing party, to recover half the costs from his own wife."

{¶ 48} Civ.R. 54(D) provides in relevant part that "costs shall be allowed to the prevailing party unless the court otherwise directs." The Ohio Supreme Court has recognized that although ordinarily the prevailing party will be awarded costs, Civ.R. 54(D) is not a grant of absolute right. *Nithiananthan v. Toirac*, 12th Dist. Warren Nos. CA2014-02-021, CA2014-02-028, and CA2014-08-114, 2015-Ohio-1416, ¶ 88, citing *State ex rel. Gravill v. Fuerst*, 24 Ohio St.3d 12, 13 (1986). The phrase "unless the court otherwise directs" is interpreted to grant "the court discretion to order that the prevailing party bear all or part of his or her own costs." *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 555, 1992-Ohio-89. An appellate court will not reverse a trial court's allocation of costs absent an abuse of discretion. *Nithiananthan* at ¶ 89.

{¶ 49} "A prevailing party is the party 'who successfully prosecutes the action or successfully defends against it * * * . The one in whose favor the decision or verdict is rendered and judgment is entered.'" *Gauthier v. Gauthier*, 12th. Dist. Warren Nos. CA2018-09-098 and CA2018-09-099, 2019-Ohio-4208, ¶ 64, quoting *Wigglesworth v. St. Joseph Riverside Hosp.*, 143 Ohio App.3d 143, 150 (11th Dist.2001). Although "a loss of

consortium claim is derivative in that it is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury, it is nonetheless legally separate and independent from the claim of the spouse who suffered the bodily injury." *Schaefer v. Allstate Ins. Co.*, 76 Ohio St.3d 553, 557, 1996-Ohio-368. Thus, the spouse claiming loss of consortium must provide evidence of his or her own injury beyond his or her spouse's injury. *Richard v. Wal-Mart Discount Stores*, 2d Dist. Miami No. 98 CA 48, 1999 Ohio App. LEXIS 4781, *20 (Oct. 8, 1999).

{¶ 50} As the jury returned a verdict in favor of Harding upon Karen's loss-of-consortium claim, she was not the prevailing party on her separate and independent claim. The trial court, therefore, did not abuse its discretion in ordering that costs be split between Karen and Harding.

{¶ 51} The Longs' third assignment of error is overruled.

{¶ 52} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.